SHORES,. Justice.
The plaintiff is an Alabama corporation known as Northside Restaurant Corporation (hereinafter lender) who, in July of 1980, agreed to loan Hugh V. Smith, Jr., and Harry H. Perdue, Jr. (hereinafter borrowers), $110,000.00. To effect this agreement, the borrowers executed a promissory note to the lender in the principal sum of $110,000.00, together with simple interest computed daily from the date of the note at the prime rate of interest as determined by First National Bank of Dothan, Alabama, plus 2%.
The terms of the promissory note specifically set out the manner and time of repayment to the lender. The second paragraph of the note provided:
“It is understood and agreed that said amount shall be due and payable as follows: Accrued interest to date shall be paid on this note on the 1st day of October, 1980, and accrued interest to date shall be paid on the 1st day of each third month following until July 1, 1981, at which time the entire principal and accrued interest shall be paid in full.”
Simultaneously with the execution of the promissory note, a loan agreement was executed. It specified that the loan proceeds would be deposited in a trust account to be used to pay current expenses mutually agreed upon and accounts payable directly related to the operation of the borrowers’ business, “The Conservatory” restaurant in Dothan, Alabama. The parties agreed that *871 the funds should not be used to benefit the borrowers personally, to pay dividends on stock, or to pay salaries or other compensation to either of the borrowers. The borrowers or their agents were to submit invoices and other expense accounts satisfactory to the lender to justify any payment request from the trust account.
When the borrowers did not pay according to the terms of the promissory note, after being duly notified, the lender filed suit on the note on December 19,1980. The borrowers had not complied with the payment terms of the note when the suit was filed and did not pay the accrued interest and principal due on July 1, 1981, as specified in the terms of the note.
The promissory note sets forth that a default on any obligation of the makers (borrowers) to the payee (lender) or a breach of the loan agreement gives the payee (lender) the option to demand at once the total obligations due. The note states as follows:
“The undersigned Makers hereby agree that in case of insolvency, bankruptcy or business failure of the undersigned Makers or any and all of them, or default on this or any obligation of the undersigned Makers or any or all of them to the Payee, specifically including any default or breach of the obligations of the Makers in the Loan Agreement between Makers and the Payee dated July 1,1980, then at the option of the Payee, this and all such obligations shall at once become due and payable without demand or notice. The undersigned Makers hereby waive presentment and demand for payment of this Note and the Payee shall have full power and authority to proceed with collection as herein further provided.”
Furthermore, in the loan agreement the borrowers agreed that if they failed to pay the principal plus interest when due, the lender could proceed against them individually at its option until the indebtedness of $110,000.00 plus interest was paid in full.
Paragraph 14 of the loan agreement released the lender from any further obligations under the agreement in the event of the breach of any of its conditions by the borrowers. The borrowers agreed not only to be personally jointly and severally liable for damages to the lender resulting from the breach, but also for any expenses incurred to the lender as a result of such breach, including expenses to enforce the agreement. The borrowers also agreed to allow the lender to “freeze” the trust account funds and to utilize them, in its discretion, to remedy any such breach. In addition the borrowers, both in the loan agreement and in the promissory note, agreed to pay reasonable attorney’s fees as the lender might incur if an attorney was employed to collect the note.
Based on the specific terms of the loan agreement and the promissory note, the lender filed a motion for summary judgment for the amount due, interest, and costs of collecting the note. The lender submitted in support of its motion the affidavit of Frank C. Martin, president of Northside Restaurant Corporation, stating that the borrowers had not complied with the terms of the note:
“On or about July 1, 1980, the Defendants, Hugh V. Smith, Jr. and Harry H. Purdue [sic], executed a promissory note to Northside Restaurant Corporation, a Corporation, in the sum of $110,000.00, a copy of which is attached hereto as Exhibit ‘A’. Said note has not been paid, and there is presently due and owing the principal sum of $110,000.00 together with simple interest'computed daily from the date of the note at the prime rate of interest as determined by the First National Bank of Dothan, Alabama, plus 2% per annum on the unpaid balance until paid adjusted monthly. Said note authorizes any Attorney at Law at any time or times after the maturity hereof to appear in any State or Federal Court of Record in the United States of America to admit the maturity of the note and the nonpayment thereof when due to confess judgment against the undersigned makers or any of them in favor of the holder of this note for the amount appearing due together with interest and cost of the suit.”
*872 In opposition to the lender’s motion for summary judgment, the borrowers submitted the following affidavit by Harry Perdue:
“That as a part of the consideration for which the promissory note which Plaintiff refers to as Exhibit ‘A’, Plaintiff and Defendants entered into a loan agreement, a copy of which is attached hereto. That entering into said agreement was a part of the consideration for the lending of the money as evidenced by the promissory note. That the Plaintiff has breached the agreement in particular Paragraphs 3 & 5 of said agreement. That the Plaintiff dominated the control of the funds for the benefit of Plaintiff ... contrary to the terms of the agreement, Furthermore, that contrary to the terms of said agreement the Plaintiff used said funds to pay rent owed to Plaintiff which Plaintiff had specifically agreed to be deferred as evidenced by Paragraph 5 of said agreement and the rent deferral agreement attached hereto. That neither of the Defendants owe Plaintiff under the terms of said promissory note due to the damages incurred by Defendants as a result of the breach of the agreements hereinbefore set forth.”
The trial court granted the lender’s motion for summary judgment, and the borrowers appealed. We affirm.
There is no genuine issue of material fact which would prevent entry of summary judgment in favor of the lender on the record before the trial court. The borrowers do not deny that the note sued upon is in default and, by its terms and by the terms of the loan agreement executed contemporaneously, the lender had the legal right to declare the entire balance due and to collect the same with attorney’s fees. In opposition to the motion, the borrowers do not raise fact issues but, instead, rely upon their interpretation of two provisions of the loan agreement. By the plain and unambiguous terms of the loan agreement, the parties agreed that the $110,000.00 was loaned “according to the terms of the note” which was attached to the agreement. The note provides:
“Accrued interest to date shall be paid on this note on the 1st day of October, 1980, and accrued interest to date shall be paid on the 1st day of each third month following until July 1, 1981, at which time the entire principal and accrued interest shall be paid in full.”
The borrowers did not pay the interest as it fell due, and thereby defaulted on the note, breaching the loan agreement, which provided, inter alia:
“Interest payments provided for in such Loan shall be paid to Lender at least quarterly by the Borrowers personally and shall not be paid from the Trust Account.

“... [I]f Borrowers shall fail to pay in full the Note plus interest when due, then Lender may proceed under the Contract [hypothecated as collateral] ... or proceed against the Borrowers individually, at lender’s option, until said note of One Hundred and Ten Thousand ($110,000) Dollars plus interest is paid in full.

“... Borrowers agree that they will personally be jointly and severally liable for any damages to the Lender resulting from the breach of any of the conditions, terms or provisions of this agreement. ... Any such breach by Borrowers will automatically ‘freeze’ the Trust Account funds and Lender will then be released from any further obligations under this Agreement and may, in its discretion, utilize any of the Trust Account funds to remedy such breach.”
The fact of default on the note and breach of the agreement was not controverted by the borrowers. The affidavit offered in opposition to the lender’s motion did not raise specific facts showing that there was any genuine issue for trial. At most, it merely joined issue on a question of law, and the trial court decided that issue correctly. Real Coal, Inc. v. Thompson Tractor Co., 379 So.2d 1249 (Ala.1980).
The parties do not dispute the provisions of the note and loan agreement. The *873 borrowers apparently urge an interpretation of those terms as somehow excusing their liability on the note. This presented only a question of law, appropriately decided on motion for summary judgment. Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190 (Ala.1978).
Finding no error, we affirm the judgment of the trial court. In doing so, we make the following observation from the record. The borrowers filed a general denial to the complaint and, at the same time, a pleading designated “counterclaim.” The gravamen of the “counterclaim,” however, was defensive only; it contained in effect the exact statements contained in the affidavit offered in opposition to the plaintiff/lender’s motion for summary judgment on the note. Neither any party nor the trial court has referred to the counterclaim since it was filed. The defendants appealed from the judgment entered on the plaintiff’s motion for summary judgment on its complaint without seeking an ARCP 54(b) order and without dismissing their counterclaim. Their every action has treated the “counterclaim” as if it were merely a defense to the complaint, and it has been treated as such by both parties and the court. Under these facts, we cannot say from the record that any claim remains unadjudicated, thereby rendering the judgment appealed from interlocutory.
The judgment appealed from is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.