This is an appeal from an order of the Circuit Court of Jefferson County granting summary judgment in favor of plaintiff-appellee, Citicorp Person-to-Person Financial Centers, Inc. (hereinafter Citicorp). This case arises from a bill of foreclosure filed by Citicorp against the defendants-appellants, Robert H. Smith and Ruth P. Smith (hereinafter the Smiths) to foreclose on a real estate mortgage securing a loan from Citicorp to the Smiths. In their answer to Citicorp's bill of foreclosure, the Smiths defended and counterclaimed against Citicorp, alleging that Citicorp charged a usurious rate of interest on the loan transaction in deliberate violation of Code 1975, § 5-19-3 (a)(2); that the loan was unconscionable *Page 309 
and unenforceable; and that the Smiths were induced to enter into the loan agreement by the fraudulent representations of Citicorp. Citicorp moved for summary judgment on the bill for foreclosure and against the counterclaim of the Smiths. The trial court granted the motion in favor of Citicorp as to the bill of foreclosure, and against the Smiths on all counts of the Smiths' counterclaim. The Smiths bring this appeal following the trial court's denial of a motion to reconsider.
The lone issue on appeal is whether the trial court was correct in granting summary judgment. We hold that the trial court was correct and affirm its decision.
The suit arose from the following facts:
In June 1978, the Smiths secured a loan from Citicorp. The loan agreement was desribed by Citicorp as an "open-end" transaction that provided for a "revolving line of credit" not to exceed $75,000.00. Under the terms of the agreement, the Smiths were entitled to request from Citicorp advances up to the credit limit subject to "lender's continuing approval of borrowers' credit." The Smith borrowed essentially the entire amount of available credit under the agreement, paying off the balance of a previous loan and utilizing the remainder of the proceeds for improvements to their home. In October 1978, the Smiths entered an identical transaction. The Smiths sought and obtained an additional $17,000.00 from Citicorp. The amount requested exceeded the credit limit of the original agreement, so a new "revolving loan agreement" was executed which included the previous indebtedness and increased the credit limit to $92,594.88. The loan was secured by a mortgage on the Smiths' residence and reflected an annual percentage rate of interest of 13.99 per cent. Repayment of the loan was to be made in 180 monthly installments of not less than $1,233.00. The Smiths made the minimum monthly payments under this agreement until October 1981. Upon default by the Smiths, Citicorp filed its bill of foreclosure on December 22, 1981. After a long and extensive period of discovery, during which time much of the 900 page-record on appeal was developed, the trial court granted summary judgment to Citicorp.
 Summary judgment is properly granted when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Whatley v. Cardinal Pest Control, 388 So.2d 529 (Ala. 1980); Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190 (Ala. 1978); Rule 56, ARCP. "If there is a scintilla of evidence supporting the position of the party against whom the motion for summary judgment is made, so that at trial he would be entitled to go to the jury, a summary judgment may not be granted." Campbell v. Alabama Power Co., 378 So.2d 718, 721 (Ala. 1979); Chiniche v. Smith, 374 So.2d 872 (Ala. 1979). . . .
 On appeal from a summary judgment, this court must look to the same factors considered by the trial court in its ruling on the motion. Chiniche v. Smith, 374 So.2d 872 (Ala. 1979); Folmar v. Montgomery Fair Co., 293 Ala. 686, 309 So.2d 818 (1975).
Jehle-Slauson Const. Co. v. Hood-Rich Architects, 435 So.2d 716
(Ala. 1983). No specific grounds for the trial court's order of summary judgment were stated, however, when the trial court makes no formal findings of fact, the reviewing court will assume that the trial court made those findings which will justify the decree rendered. Barrett v. Odom, May, DeBuys,453 So.2d 729 (Ala. 1984); Sims v. Reinert, 285 Ala. 658,235 So.2d 802 (1970); Dockery v. Hamner, 281 Ala. 343,202 So.2d 550 (1967).
Although several issues are brought in this appeal, the dispositive question is whether there was a genuine issue of material fact raised by the evidence presented that the loan from Citicorp was not a bona fide open-end transaction.
The Smiths contend that the Citicorp loan was not a bona fide open-end transaction, but rather, a closed-end loan disguised as a revolving loan account. The Smiths argue that on a closed-end loan in substance, the *Page 310 
permissible interest rate on it was eight percent add-on pursuant to Code 1975, § 5-19-3 (a)(3), and not one and one-half percent per month on the unpaid balance as allowed by Code 1975, § 5-19-3 (c), for open-end loans. Furthermore, the Smiths assert that no future advances were intended to be made by Citicorp under the loan; that the loan was merely a scheme by which Citicorp extracted usurious interest in deliberate violation of the law; and that Citicorp fraudulently represented to the Smiths that the loan was open-ended.
Citicorp argues that the loan was an open-end credit plan as defined by law and that the interest rate was permissible. Moreover, Citicorp contends that because the Smith loan was open-ended there was no fraudulent misrepresentation as to the nature or effect of the loan agreement.
The Smiths assert that as to the nature of the loan agreement there exists a material issue of fact which precludes summary judgment. We disagree. In Collier v. Brown, 285 Ala. 40, 44,228 So.2d 800, 803, the Court observed:
 A general rule of contract law states that when the parties reduce their agreements to writing, the writing — in the absence of mistake or fraud or ambiguity — is the sole expositor of the transaction and the intention of the parties. Joseph v. Hopkins, 276 Ala. 18, 158 So.2d 660 (1963).
The words of a contract are to be given their ordinary meaning, and the intention of the parties is to be derived from the provisions of the contract. Food Service Distributors, Inc. v.Barber, 429 So.2d 1025 (Ala. 1983); Sisco v. Empiregas, Inc. ofBelle Mina, 286 Ala. 72, 237 So.2d 463 (1970). Code 1975, §8-8-5 (a), provides:
 Any person or persons, corporations, trust, general partnership or partnerships, limited partnership or partnerships, or association may agree to pay such rate or rates of interest for the loan or forbearance of money and for any credit sales as such person, corporation, trust, general partnership, limited partnership or association may determine, notwithstanding any law of this state otherwise prescribing or limiting such rate or rates of interest; provided, that the original principal balance of the loan or forbearance of money or credit sales is not less than $2,000.00; provided further, that all laws relating to unconscionability in consumer transactions including but not limited to the provisions of chapter 19 of Title 5, known as the Mini-Code, shall apply to transactions covered by this section.
Code 1975, § 5-19-1 (5), defines "open end credit plan": "a plan prescribing the terms of credit transactions which may be made thereunder from time to time and under the terms of which a finance charge may be charged from time to time on an outstanding unpaid balance." In addition, Code 1975, § 5-19-4, provides for certain additional charges for default and dictates allowable methods of prepayment interest calculations. Open-end credit plans are expressly excluded from Code 1975, §5-19-4, and, therefore, such plans shall not contain the provisions of this section. The agreement at issue here contains none of these provisions. Although open-end credit plans are commonly utilized by retail stores and oil companies for the sale of goods and merchandise, a plain reading of the aforesaid Code provisions reveals no legislative intent to limit such transactions to these circumstances. The Code does not purport to prohibit a creditor making a cash loan in excess of $2,000.00 from charging one and one-half percent per month on the unpaid balance, provided that the transaction complies with the code requirements for an open-end loan. Examining the four corners of the loan agreement, it appears that the transaction complies with all applicable code provisions and is an open-end loan on its face.
When the terms of a contract are clear and certain, it is the duty of the court and not the jury to analyze and determine the meaning of the contract. C.F. Halstead Contractor, Inc. v.Dirt, Inc., 294 Ala. 644, 320 So.2d 657 (1975). Moreover, if an instrument is unambiguous, its construction *Page 311 
and effect are questions of law which may be decided by summary judgment. Warrior Drilling Engineering Co. v. King,446 So.2d 31 (Ala. 1984); Federal Land Bank of New Orleans v. TerraResources, Inc., 373 So.2d 314 (Ala. 1979). The contract in the present case is such an instrument and we find that there is no material issue of fact created by the clear terms of the contract as to the nature of the loan.
The Smiths argue that the court may look to parol evidence to determine the intent of Citicorp in the making of the Smith loan. Affidavits of two former Citicorp employees were offered to prove that Citicorp never intended to make future advances under the Smith loan, and it is argued that this evidence raises a genuine issue of fact that Citicorp fraudulently misrepresented the nature of the loan. We are asked to look beyond the written contract to determine the true intent of the parties.
This Court has long held that absent some evidence of fraud in procuring a party's signature or concealing or misrepresenting the contents of the contract, a party to the contract cannot contradict the instrument by a parol agreement made at the time of execution and that evidence which tends to contradict, vary, or alter the terms of the contract is not admissible. Racquetball of Mobile, Inc. v. Wisser,429 So.2d 1020 (Ala. 1983); Blake v. Coats, 292 Ala. 351, 294 So.2d 433
(1974); Steiner Bros. v. Slifkin, 237 Ala. 226, 186 So. 156
(1939). Moreover, absent a clear showing of fraud, the court will not look to parol evidence to determine the intent of the parties. Jehle-Slauson Constr. Co. v. Hood-Rich Architects,supra.
In the present case, the evidence presented by the Smiths was not sufficient to bring the loan transaction within the fraud exception to the parol evidence rule. The deposition testimony of Mr. Smith supports this conclusion:
 Q. Okay. On either of those two occasions in October of 1978, when you went to Citicorp's office in Century Plaza to do the paperwork on that loan, did Jerry Hayes or any other Citicorp employee make any statement or representation to you different from what is contained on these papers which are Exhibit "A" to your deposition?
A. No, sir.
 Q. Okay. When did you first consider taking any legal action against Citicorp referable to this loan?
 A. When I got behind in my payments and they called me, this fellow, Robinson, Claude Robinson, and some other people from the downtown office threatening to foreclose on my property.
Q. All right. About when was that?
A. October or November.
Q. of '81?
A. Of '81, yes, sir.
Q. Is that when you first contacted a lawyer?
A. Yes, sir.
Clearly, Mr. Smith admits that there was no representation made by Citicorp that in any way altered the unambiguous language of the loan agreement.
Despite the absence of a showing of fraud in the inducement or contents of the agreement, the Smiths argue that Citicorp never intended to make additional advances under the agreement and that, had such advances been requested, they would not have been forthcoming. The record shows that the Smiths never requested an additional advance. Had a request been made for additional sums under the agreement and had that request been refused by Citicorp, a question of fact negating summary judgment may have arisen. Based upon the facts as they exist, however, the probable result of a request for additional advances is speculative and a scintilla of evidence will not be inferred by mere speculation. Arrington v. Working Woman'sHome, 368 So.2d 851 (Ala. 1979); Rota v. Combs, 267 Ala. 50,99 So.2d 692 (1958).
We also find that the evidence offered by the Smiths' affidavits of the former Citicorp employees is inadmissible and, therefore, does not raise an issue of material fact. Rule 56 (e), A.R.Civ.P., provides: *Page 312 
". . . affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Both affidavits run afoul of the requirements of Rule 56 (e). First, as previously stated, the consideration of these affidavits in light of the unambiguous terms of the loan agreement, which admittedly contains the entire agreement of the parties, would fly in the face of the prohibition of parol evidence to vary, alter, or contradict the contract. See Racquetball of Mobile, Inc. v.Wisser, supra; Smith v. Northside Restaurant Corp.,430 So.2d 870 (Ala. 1983); Wheeler v. First Alabama Bank of Birmingham,364 So.2d 1190 (Ala. 1978). Second, the affidavits do not affirmatively show that the affiants have the requisite knowledge and that they are competent to testify about the transaction at issue. Both requirements are necessarily mandatory. Day v. Merchants Nat'l Bank of Mobile,431 So.2d 1254 (Ala. 1983); Butler v. Michigan Mut. Ins. Co.,402 So.2d 949 (Ala. 1981). Neither affidavit shows that the affiant has personal knowledge of the Smith loan, nor any knowledge of the circumstances surrounding that particular transaction. Whatever familiarity these former employees have with regard to other transactions of Citicorp does not make them competent to testify, nor is it relevant to establish evidence of fraud in the instant case.
The record reflects that the trial court allowed extensive discovery over an extended time period. The Smiths were given an ample opportunity to uncover evidence to develop their theory in this action; however, the admissible and competent evidence offered by the Smiths fails to raise an issue of material fact. There being no fact question present, there exists only a question of law, appropriate for summary judgment, and one we hold that the trial court correctly decided. The judgment is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, ALMON and BEATTY, JJ., concur.