694 So.2d 1271 (1997)
RYAN WARRANTY SERVICES, INC.
v.
Ruby Joyce WELCH.
1950419.
Supreme Court of Alabama.
January 10, 1997.
Rehearing Denied April 18, 1997.
Davis Carr and James W. Lampkin II of Pierce, Carr, Alford, Ledyard & Latta, P.C., Mobile, for Appellant.
Samuel A. Cherry, Jr., and Carl E. Underwood III of Cherry, Givens, Peters, Lockett & Diaz, P.C., Dothan, for Appellee.
SHORES, Justice.
This appeal concerns a specific arbitration clause in a vehicle mechanical repair service contract between the plaintiff Ruby Joyce Welch and the defendant Ryan Warranty Services, Inc. Ryan Warranty appeals from the trial court's denial of its motion to submit the dispute to arbitration and to stay the action pending arbitration. We affirm.
Welch purchased a used 1988 Chevrolet Beretta automobile from the Plaza Annex dealership in Dothan on May 3, 1994. When she bought the car, she also purchased a used vehicle mechanical repair agreement from Ryan Warranty Services, Inc., for a premium of $779. This agreement contained the following provision:

*1272 "YOUR RESPONSIBILITIES IF YOU HAVE A BREAKDOWN
"If you experience a breakdown you agree to:
* Use all reasonable means to protect your car from further damage.
* Notify us as soon as possible if you are unable to return to the dealer from whom you purchased this Agreement.
* Furnish us with such information as we may reasonably require, and if requested provide proof of your car's regular maintenance during the Agreement Period as recommended by the manufacturer in the Owner's Manual.
* Allow us to examine your car if we ask to do so.
* Obtain authorization from Ryan Warranty Services, Inc. prior to beginning any repairs covered by this Agreement when repairs are to be performed by a repairer other than us.
* If you have a breakdown on a weekend or holiday, please call the following business day to receive further instructions. Customer service hours are 7:30 AM 5:00 PM (central time) Monday through Friday."
(Bold type in the original.) In December 1994, the car broke down. The repairs were completed before Ryan Warranty had performed an inspection. Welch submitted a claim to Ryan Warranty Services.
On February 3, 1995, Ryan Warranty denied Ms. Welch's claim, on the grounds that she had breached the warranty agreement by not allowing Ryan's agent to inspect the vehicle before the repairs were made, as provided for in the agreement. Ryan Services stated in its letter to Ms. Welch:
"Ryan Warranty Services, Inc., has reviewed the claim on the above referenced agreement, and is unable to provide reimbursement for the following reason(s):
"Authorization for the repair was not obtained prior to completion as required under the terms of the Mechanical Repair Contract. We were unable to inspect the vehicle for the necessity of the repairs performed...."
Ryan Services denied the claim in its entirety.
Welch then sued Ryan Warranty, alleging breach of contract, bad faith, and fraud. Ryan Warranty moved to submit the dispute to arbitration and to stay the proceedings pending arbitration. Ryan Warranty appeals from the trial court's denial of this motion.
The mechanical repair service contract between the parties contains a specific arbitration clause, which reads as follows:
"ARBITRATION
"In the event of a disagreement between you and us concerning costs, either of us may make a written demand for arbitration. This must be done within 60 days after the day you filed your claim. Each ofus will select an appraiser. The two appraisers will select an umpire. Each of us will pay the expenses of the appraiser we select. The expenses of the umpire will be shared equally. Unless both of us agree otherwise, arbitration will take place in the county and state in which you live. Local rules apply. A majority decision will be binding."
(Bold type in the original.) The term "cost" is defined in the agreement:
"`Cost' means the usual and fair charges for parts and labor necessary to repair or replace the parts covered. These charges shall not exceed manufacturer's suggested retail price for parts and labor allowances derived from nationally recognized labor time standards. Replacement parts will be of the same quality as the covered parts and may include new, rebuilt, or used parts."
The standard of review applicable in this case is the "clearly erroneous" standard. Ex parte Warrior Basin Gas Co., 512 So.2d 1364, 1368 (Ala.1987); Ex parte Kent Corp., 641 So.2d 242 (Ala.1994). Applying this standard, we conclude that the trial court's denial of the motion to compel arbitration and to stay the proceedings pending arbitration is not clearly erroneous.
The question whether a contract's arbitration clause requires arbitration of a given dispute remains a matter of contract interpretation. Atkinson v. Sinclair Refining *1273 Co., 370 U.S. 238, 242, 82 S.Ct. 1318, 1321, 8 L.Ed.2d 462 (1962). The answer depends on the intent of the parties, and the threshold question is whether the parties intended that the particular dispute be covered by the arbitration clause. Ex parte Warrior Basin Gas Co., supra, at 1367, citing Seaboard Coast Line R.R. v. Trailer Train Co., 690 F.2d 1343 (11th Cir.1982). The Court of Appeals for the Eleventh Circuit held in Seaboard that, notwithstanding the applicability of the Federal Arbitration Act to a contract's arbitration clause, the question whether the clause requires arbitration of a given dispute remains a matter of contractual interpretation, to be determined by the intent of the parties. 690 F.2d at 1348.
When parties so tailor an arbitration clause that it is applicable only in a clearly defined situation, such as the clause in this case, it indicates that the parties intended to limit the arbitrable issues to those specified. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-85, 80 S.Ct. 1347, 1353-54, 4 L.Ed.2d 1409 (1960). A party to a contract can be forced to arbitrate only those issues he or she specifically agrees to submit to arbitration. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-44, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). General rules of contract interpretation require that the intent of the parties be derived from the words of the contract, unless an ambiguity exists. Loerch v. National Bank of Commerce, 624 So.2d 552 (Ala.1993). Additionally, a contract is to be construed in its entirety and not solely on a single provision. Yu v. Stephens, 591 So.2d 858 (Ala.1991).
The trial court determined that the contract here did not require arbitration of the dispute presented in Welch's action, but the court did not make specific findings of fact. This Court has written to the situation where a trial court denies a motion to compel arbitration, but does so without making a specific finding of fact:
"[W]e assume that the trial court found, as a fact, that the parties did not intend for this particular dispute to be covered by the arbitration clause. In other words, although the finding of the trial court is not specific, we must assume that the trial judge, by denying the stay of proceedings pending arbitration, necessarily found that the parties did not intend for the arbitration clause to cover the dispute. We make this assumption based on the rule that `when the trial court makes no formal findings of fact, the reviewing court will assume that the trial court made those findings which will justify the decree rendered.' Smith v. Citicorp Person-to-Person Financial Centers, Inc., 477 So.2d 308, 309 (Ala.1985)."
Ex parte Warrior Basin Gas Co., supra, 512 So.2d at 1368. It is clear that the trial court concluded that Ryan Services denied Welch's claim because it contended that she had breached the agreement.
The trial court concluded that the parties intended that the arbitration clause be specific and limited only to the issue of costs, and, thus, that Ryan Warranty was not entitled to compel arbitration. Such a determination by a trial court of what was intended by the parties in their agreement is a question of fact, not to be disturbed by this Court unless clearly erroneous. Ex parte Warrior Basin Gas Co., supra, 512 So.2d at 1368, citing Western Beef, Inc. v. Compton Investment Co., 611 F.2d 587, 591 (5th Cir.1980). It is clear from the agreement that the parties intended this to be a clearly defined and specific arbitration clause, applying only to disputes concerning costs. The agreement defines "costs" as "the usual and fair charges for parts and labor necessary to repair or replace the parts covered." As previously stated, Ryan Warranty denied Welch's claim in its entirety. The question whether the charges associated with repairing the vehicle were "usual and fair charges for parts and labor necessary to repair," which would be subject to arbitration, was not raised.
For the reasons stated above, the order of the trial court is affirmed.
AFFIRMED.
ALMON, HOUSTON, KENNEDY, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., and MADDOX, J., dissent.
*1274 MADDOX, Justice (dissenting).
It appears to me that the very essence of the dispute between the parties in this case arises out of the defendant's failure to pay the costs that the plaintiff incurred in repairing the covered automobile. It seems to me that the term "costs" in the arbitration agreement is broad enough to cover a dispute over expenses incurred in repairing a vehicle, which incidentally was the theory of the plaintiff's claim.[1]
The record, in fact, suggests that the reason given by the defendant for denying the claim was the fact that the plaintiff had failed to advise it before the "costs" were incurred, as provided for in the contract, and, even though the word "costs" is defined, it is clear that the dispute in this case is over the cost of services rendered in the repair of the covered vehicle. The law relating to the scope of arbitrable issues clearly states that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985).
The plaintiff also argues that because the provisions of the McCarran-Ferguson Act, 15 U.S.C. § 1012(b), leave to the States the regulation of the business of insurance, the preemption provisions of the Federal Arbitration Act ("F.A.A.") are precluded by Alabama's statute disfavoring specific enforcement of arbitration clauses.[2] Although the plaintiff did not raise the issue of the applicability of the McCarran-Ferguson Act in the trial court, she does raise it here as authority for sustaining the trial court's order refusing to stay the proceeding. The majority does not address this issue, but the Supreme Court of the United States and several other jurisdictions have. Because I believe that it will be hotly litigated in the future, I feel compelled to address it at this time.
The McCarran-Ferguson Act provides, in part, that "[n]o act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purposes of regulating the business of insurance... unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012. Because the agreement in this case is a contract of insurance, the plaintiff argues that "the McCarran-Ferguson Act preserved to the States the right to regulate insurance and precluded the application of the F.A.A. to insurance contracts."
I have reviewed the cases cited by the plaintiff, Mutual Reinsurance Bureau v. Great Plains Mut. Ins. Co., 969 F.2d 931 (10th Cir.1992), cert. denied, 506 U.S. 1001, 113 S.Ct. 604, 121 L.Ed.2d 540 (1992), and Stephens v. American Int'l Ins. Co., 66 F.3d 41 (2d Cir.1995), and find that in both cases state law specifically addresses insurance contracts. In the Stephens case, a specific Kentucky statute prohibited compelling an insurance liquidator to arbitrate disputes concerning delinquency proceedings, and in Mutual Reinsurance Bureau, a specific Kansas statute provided for the validity of arbitration agreements except agreements in contracts of insurance. The plaintiff cites no specific individual statute that addresses insurance contracts in Alabama, but argues that Alabama's general statute, Ala.Code 1975, § 8-1-41(3), which states that agreements to arbitrate cannot be specifically enforced, would apply to contracts of insurance, especially in view of the provisions of the McCarran-Ferguson Act quoted above.
I cannot agree with the plaintiff's argument, because § 8-1-41(3) is a general statute and is not specifically tailored to apply to "the regula[tion] of the business of insurance." 15 U.S.C. § 1012(b). My disagreement with the plaintiff is based upon my review of cases decided by the Supreme Court of the United States and other federal courts that have addressed the question presented, that being the impact of the F.A.A. on agreements to arbitrate in view of the provisions of the McCarran-Ferguson Act. The substance of these holdings, as I read them, is that a commonsense view of the word "regulates" would lead to the conclusion that in order to regulate insurance, the *1275 specific state law must not just have an impact on the insurance industry, but be specifically directed toward that industry. See, Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 50, 107 S.Ct. 1549, 1554, 95 L.Ed.2d 39 (1987). The inevitable conclusion, based on my interpretation of these cases, is that the F.A.A. applies to contracts of insurance unless there is a state statute specifically directed toward that industry dealing with the validity of arbitration clauses in insurance contracts. In Pilot Life Insurance Co. v. Dedeaux, for example, the Supreme Court of the United States rejected an argument that Mississippi's bad faith law was a law regulating insurance under the provisions of the McCarran-Ferguson Act, and held that the F.A.A. applies to arbitration agreements in insurance contracts, unless there is a specific state statute that conflicts with the F.A.A. and the enforcement of an arbitration agreement would invalidate, impair, or supersede a state law regulating the business of insurance.
Barnett Bank of Marion County, N.A., v. Nelson, ___ U.S. ___, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996), although not involving the F.A.A., does involve rights created by an act of Congress. In that case, the United States Supreme Court discussed the McCarran-Ferguson Act's antipreemption rule, which generally prohibits federal statutes from preempting state insurance laws, and held that a federal statute granting national banks in small towns the authority to sell insurance preempted a Florida state law prohibiting national banks from selling insurance.
In support of her argument that the F.A.A. is not applicable to insurance contracts because of the provisions of the McCarran-Ferguson Act, plaintiff has not cited any Alabama State law that would be invalidated, impaired, or superseded by the F.A.A., i.e., any law specifically forbidding the enforcement of arbitration clauses in insurance contracts. Moreover, the plaintiff's argument has been specifically rejected by the United States Court of Appeals for the Fifth Circuit in Miller v. National Fidelity Life Ins. Co., 588 F.2d 185 (5th Cir.1979), where the Court said:
"Miller does not identify any statute which would be impaired, invalidated, or superseded by the Arbitration Act. An examination of the insurance code reveals that it has no provision concerning arbitration clauses. The test under McCarran-Ferguson is not whether a state has enacted statutes regulating the business of insurance, but whether such statutes will be invalidated, impaired or superseded by application of federal law."
Miller, 588 F.2d at 187; see, also, Hart v. Orion Ins. Co., 453 F.2d 1358 (10th Cir.1971); and Hamilton Life Ins. Co. of New York v. Republic Nat'l Life Ins. Co., 408 F.2d 606 (2d Cir.1969).
The defendant argues that the Supreme Court adopted the McCarran-Ferguson test to reject an argument that Mississippi's bad faith law was a law regulating insurance and, therefore, not preempted by ERISA, citing and quoting from Pilot Life Ins. Co. v. Dedeaux, where the Court held:
"Neither do the McCarran-Ferguson Act factors support the assertion that the Mississippi law of bad faith `regulates insurance.' Unlike the mandated-benefits law at issue in Metropolitan Life, the Mississippi common law of bad faith does not effect a spreading of policyholder risk. The state common law of bad faith may be said to concern `the policy relationship between the insurer and the insured.' The connection to the insurer-insured relationship is attenuated at best, however. In contrast to the mandated-benefits law in Metropolitan Life, the common law of bad faith does not define the terms of the relationship between the insurer and the insured; it declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages. The state common law of bad faith is therefore no more `integral' to the insurer-insured relationship than any State's general contract law is integral to a contract made in that State."
481 U.S. at 50-51, 107 S.Ct. at 1555. See also Smith v. Jefferson Pilot Life Ins. Co., 14 F.3d 562 (11th Cir.), cert. denied, 513 U.S. *1276 808, 115 S.Ct. 57, 130 L.Ed.2d 15 (1994) (Georgia statute requiring an insurer to notify insureds of employer's termination of ERISA plan held not a law regulating the business of insurance under the McCarran-Ferguson Act test).
Based on the foregoing, I respectfully dissent.
HOOPER, C.J., concurs.
NOTES
[1] She claimed that the defendant did not pay her claim for the costs she incurred for towing, getting a rental car, and getting her car repaired.
[2] Section 8-1-41(3), Ala.Code 1975.