Thomas Littlepage ("the husband") and Renee Littlepage ("the wife") were divorced on December 3, 1997. On April 23, 1998, the wife filed a "Motion for Rule Nisi" to require the husband to pay debts she said were covered by the settlement agreement incorporated into the divorce judgment. After an ore tenus proceeding, the trial court ordered the husband to pay $14,398.78 in additional debts not stipulated by the settlement agreement, even though it comprehensively addressed each *Page 299 
party's rights to and obligations for the payment of debts. The husband appealed, and the Court of Civil Appeals affirmed the judgment of the trial court without an opinion on January 28, 2000. Littlepage v.Littlepage (No. 2981261), 790 So.2d 368 (Ala.Civ.App. 2000) (table). The Court of Civil Appeals also overruled the husband's application for rehearing and denied his Rule 39(k), Ala.R.App.P., motion. The husband then petitioned this Court for certiorari review, which we granted to determine whether the trial court erred by modifying the divorce judgment incorporating the parties' settlement agreement, on the wife's motion filed more than 30 days after the entry of the divorce judgment.
Paragraph 15 of the settlement agreement incorporated into the divorce judgment provides:
 "That each party shall be separately responsible for any debt, account, or expense titled in their respective names and shall forever hold the other harmless therefrom, except the parties agree that the balance on deposit in the Compass Bank savings account shall be expended to pay off the following accounts as the balance on each account existed on September 1st, 1997, namely: the Plaintiff's [the wife's] individual Visa account; the parties' joint Visa account; the Discover account; the McRae's account; and the account with Gayfers. Any item charged by either party on any of the above identified accounts subsequent to September 1st, 1997, shall be the separate debt of the party incurring the same. Any balance remaining from the savings account after payment of the identified accounts shall be equally divided between the parities. In the event the proceeds from the Compass Bank savings account are insufficient to pay the due balances in their entirety then, in such event, sufficient funds shall be withdrawn from the parties' Morgan Keegan Brokerage Account to extinguish in their entirety each of the above identified indebtednesses."
(C.R. 36.) (Emphasis added.)
After the divorce, the wife submitted to the husband seven credit card bills for him to pay. The husband refused to pay any of the bills, and the wife subsequently filed a "Motion for Rule Nisi," which alleged in pertinent part:
 "The Plaintiff would show under Paragraph Fifteen of the Judgement of Divorce, the balances on deposit in the Compass Bank savings accounts were to be expended to pay off the following accounts as each account existed on September 1, 1997: (1) the Plaintiff's individual Visa account, (2) the parties' joint Visa account, and (3) the Discover account. The Plaintiff has furnished the attorney for the Defendant statements for each of these businesses but the Defendant has failed and refused to make the payments as ordered in Paragraph Fifteen."
(C.R. 41.) Answering this allegation, the husband alleged:
 "Denied. During mediation in determining payment of bills, the Plaintiff disclosed the existence of two (2) Visa accounts, one joint and one personal, with a combined balance of approximately $10,000. The Plaintiff was repeatedly asked if all obligations and amounts had been disclosed and the Plaintiff advised that all had been disclosed. Subsequent to the divorce the Plaintiff delivered seven (7) bills to Defendant's attorney as follows: Compass Visa $1,270.98, Wachovia $2,995.69, Visa Southtrust $5,011.59, Visa $3,468.71, Visa Bank America $4,833.29, Visa Advanta $3,516.898, and First Card $6,049.61 for a total of approximately $27,146.75. In *Page 300 
addition to the unexpected number and amount, the top portion of the bills was removed making it difficult to determine which was the `joint' account and which was the `individual' account. Also, the bills showed charges past the September 1 cutoff date. In addition the Discover card bill was delivered with the top portion missing so no address was provided for payment. Also, the balance of the Discover card was represented at the mediation as being $2,000 and the September balance was $6,913.55."
(C.R. 46.) The husband asserted further that he "cannot pay all the bills until it is determined which two of the seven Visa Bills are to be paid and until an address for Discover is provided." (C.R. 16-17.)
The trial court then conducted a hearing to determine whether paragraph 15 of the divorce judgment required payment of the additional debts submitted by the wife from the parties' savings account or brokerage account. At the hearing, the mediator who presided over the parties' settlement negotiations testified that one of the objectives of the negotiations was for the wife to be debt free after the divorce. He testified also that only two Visa accounts were discussed during the mediation and that those two accounts were not specifically identified by the bank to which each debt was owed, the account number, or the amount owed. The mediator acknowledged that the wife gave him a list of debts. According to the mediator, those are the debts stipulated in paragraph 15 of the divorce agreement. The husband's counsel then asked the mediator to review Defendant's Exhibit 2, a list of credit card debts identified according to the name of the bank to which each debt was owed and the amount owed — totaling $27,146.75. Upon reviewing the exhibit, the mediator reiterated that only two Visa accounts were discussed during the mediation. He stated further that he was not able to identify those two accounts in Exhibit 2 because he was not aware of the names of the banks to which the debts discussed during the mediation were owed.
Exhibit 2 reads as follows:
"Compass Visa $1,270.98
"Wachovia $2,995.69
"Visa SouthTrust $5,011.59
"Visa $3,468.71
"Visa BancAmerica $4,833.29
"Visa Advanta $3,516.88
"First Card Visa $6,049.61
"TOTAL $27,146.75"
The parties agreed that the Compass Visa account was the parties' joint account, which had been paid by the husband. (R. 15-18.) The parties agreed also that the other accounts listed belonged to the wife and that the balances on the accounts were incurred before September 1, 1997, the cutoff date stated in the divorce judgment. (R. 17-18, 52.) The parties, however, disagreed on whether the five Visa accounts other than the Compass Visa joint account were covered by paragraph 15 of the divorce judgment. The wife's counsel argued that paragraph 15 should have read that the monies in the Compass Bank savings account were to be used to pay the wife's "individual accounts" rather than her "individual account." When the trial court asked the mediator whether the five Visa accounts were contemplated in paragraph 15 of the agreement, the mediator maintained that only two Visa accounts were discussed during the mediation and that, according to the wife, those Visa accounts together had an approximate total balance of $12,000. (R. 18-19.) When the wife's counsel asked the mediator whether paragraph 15 should have read that the Compass Bank savings account was to be used to pay, among the other accounts specified in the paragraph, all "individual accounts" held by the wife rather than a single "individual account" held by the wife, the mediator answered: "[T]hat's not *Page 301 
what I recall nor do my notes reflect that. If I may, I was identified five charge accounts and there were two Visas, a Discover, a McRaes and a Gayfers." (R. 19.)
The husband testified that he was aware of the wife's right to payment of the appropriate balances of the accounts stipulated in paragraph 15 of the divorce agreement, that he was aware that, at the time of the mediation, those balances totaled approximately $12,000, and that he was not aware that the wife had any Visa accounts in her name except the one account stipulated in paragraph 15.
The wife testified that, during the mediation, the parties discussed the parties' debts to be paid but did not identify the debts according to creditors, account numbers, or amounts owed. She denied telling the mediator that the total debt owed on the credit cards was $12,000. The wife acknowledged that she read the settlement agreement before signing it, but stated that she interpreted paragraph 15 as specifying payment for all her Visa accounts, even though paragraph 15 specified payment of only one Visa account held by the wife. (R. 47.) The wife testified also that she believed approximately $16,000 or $17,000 was in the Compass Bank savings account at the time of the divorce.
After hearing testimony from the witnesses and oral arguments by counsel, the trial court issued an order, dated June 17, 1999, stating in pertinent part:
 "A judgment is awarded against the Defendant in favor of the Plaintiff for the sum of $14,399.78 representing reimbursement towards a portion of the debts that were not covered in the Judgment of Divorce which are in the Plaintiff's name, to wit: VISA BancAmerica, VISA Advanta, and First Card VISA."
(C.R. 82.) (Emphasis added.)
The husband argues that the effect of the order by the trial court is to modify the unambiguous provisions of paragraph 15, incorporated in the divorce judgment, governing payment of the parties' debts. He argues that the trial court did not have jurisdiction to modify the settlement in the divorce judgment on the wife's motion filed more than 30 days after the entry of the judgment.
"A court cannot modify property provisions [in divorce judgments], except to correct clerical errors, after 30 days from the final judgment." Hamilton v. Hamilton, 647 So.2d 756, 759 (Ala.Civ.App. 1994). Further, "[b]arring fraud and duress, . . . a property settlement agreement incorporated into a divorce decree is final and not modifiable." Mashatt v. Mashatt, 469 So.2d 607, 610 (Ala.Civ.App. 1985). Additionally, "divorce decrees are to be construed like other written instruments, and, if there is any uncertainty, the court must construe them so as to express the intent of the parties. Such intent can be derived from the provisions of the agreement." Satterfield v.Satterfield, 419 So.2d 601, 603 (Ala.Civ.App. 1982).
 "Whether an agreement is ambiguous is a question of law for the trial court. Terry Cove North v. Baldwin County Sewer Authority, Inc., 480 So.2d 1171 (Ala. 1985). When the agreement is reasonably susceptible to more than one meaning, an ambiguity exists. The instrument is unambiguous if only one reasonable meaning clearly emerges. Blue Cross Blue Shield of Alabama v. Beck, 523 So.2d 121 (Ala.Civ.App. 1988). The words of an agreement are to be given their ordinary meaning, and the intention of the parties is to be derived from the provisions of the contract. Smith v. Citicorp Person-to-Person Financial Centers, Inc., 477 So.2d 308 (Ala. 1985). When the provisions are certain and clear, it is the duty of the *Page 302 
trial court to analyze and determine the meaning of the provisions. Pate v. Merchants National Bank of Mobile, 428 So.2d 37 (Ala. 1983). Where an ambiguity exists, the trial court may admit parol evidence to explain or clarify the ambiguity. Mass. Appraisal Services, Inc. v. Carmichael, 404 So.2d 666 (Ala. 1981)."
Vainrib v. Downey, 565 So.2d 647, 648 (Ala.Civ.App. 1990).
 "[W]here the terms of an agreement between divorcing parties is doubtful or the language of the agreement is ambiguous, the court may allow testimony regarding precontract negotiations as well as the understanding of the parties. However, if the terms of a written agreement appear to be both clear and certain, oral testimony regarding the intent or understanding of one of the parties is inadmissible."
Croft v. Croft, 513 So.2d 630, 632 (Ala.Civ.App. 1987) (citations omitted and emphasis added).
In the case before us, the language of the divorce judgment provided that "the Compass Bank savings account shall be expended to pay off the following accounts as the balance on each account existed on September 1st, 1997, namely: the Plaintiff's [the wife's] individual Visa account. . . ." Although the wife contends that she intended the agreement and the divorce judgment to pay off all her Visa accounts, she admitted that she reviewed the agreement before she signed it.
The only ambiguity in paragraph 15 is the identity of the wife's own single Visa account to be paid from the parties' savings account or brokerage account. The singularity of the Visa account stipulation is unambiguous. Likewise, the agreement unambiguously identifies the parties' other respective debts to be so paid. Thus, the law prohibited the trial court from varying the express provisions of the divorce judgment or considering parol evidence except to identify the single Visa account of the wife's to be paid from the savings account or the brokerage account. In all other respects, the judgment must be enforced as written.
Moreover, the "judgment . . . awarded against the Defendant in favor of the Plaintiff for the sum of $14,398.78" on June 17, 1999, reveals on its face that it does not purport to apply the provisions of the original divorce judgment, either with or without interpretation, as the law requires. Rather, the later "judgment," issued on a motion filed long after the court lost jurisdiction to revise the original divorce judgment, orders the husband to pay "reimbursement towards a portion of the debts that were not covered in the Judgment of Divorce which are in the Plaintiff's name." (C.R. 82.) (Emphasis added.)
Accordingly, we reverse the judgment of the Court of Civil Appeals affirming the judgment of the trial court ordering the husband to pay an additional debt of $14,398.78 not covered by the divorce judgment. We remand this cause to the Court of Civil Appeals for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Moore, C.J., and Houston, See, Lyons, Brown, Harwood, Woodall, and Stuart, JJ., concur. *Page 303