Phyllis Abrams Hammock ("the wife") and Larry Ray Hammock ("the husband") were divorced in May 1999. The divorce judgment incorporated the parties' settlement agreement, which read, in pertinent part:
"Section II
"Property Division
 "1. The fee simple title to the 20 acre parcel of land located in Tallapoosa County, Alabama, shall be vested in the [husband].
". . . .
 "3. The [wife] shall have the exclusive ownership of the 1998 Homestead 56 x 28 mobile home, and all furniture, furnishings and appliances therein.
 "4. All right and title to the following described chattel is hereby divested out of the [wife] and vested in the [husband], subject to any encumbrances against the same: all of the [husband's] personal effects, jewelry, and clothing, the Chevrolet Blazer and the Isuzu pickup truck; everything owned by the [husband] prior to the marriage.
 "5. All right and title to the following described chattel is hereby divested out of the [husband] and vested in the [wife], subject to any encumbrances against the same: all of the [wife's] personal effects, jewelry, and clothing, the 1995 Honda Elantra, and everything owned by the [wife] prior to the marriage.
 "6. Any chattel not listed in paragraphs 4 and 5 above shall be the sole and exclusive property of the person having possession of the same on the date this agreement is executed, subject to any encumbrances against the same.
 "7. Each party shall be responsible for the debt in their name only."
In September 2001, the husband filed a contempt petition, seeking to have the wife held in contempt for failing to pay the mortgage payments on the mobile home awarded to her in the divorce judgment. The wife did not appear at the trial, which was held on January 4, 2002. The trial court found the wife in contempt for failing to make the payments on the mobile home. The trial court's February 2002 judgment required the wife to either refinance the mobile home in her sole name or to otherwise relieve the husband of the debt owed on the mobile home within 45 days of the judgment. The trial court ordered that, if the wife failed to do so, the husband was to be awarded the mobile home and that the wife was to pay the reasonable costs associated with moving the mobile home from her property to his. The trial court also ordered that the wife pay the husband's $1,300 attorney fee. After her postjudgment motion was denied,[1] the wife appealed.
The wife argues that the trial court could not hold her in contempt for failing to make the payments on the mobile home because the 1999 divorce judgment does not require her to make those payments. In fact, she points out, the agreement incorporated into the divorce *Page 358 
judgment is silent as to the debt associated with the mobile home. The only provision in the judgment addressing debt requires each party to be responsible for the debts in their own name; the debt associated with the mobile home was a joint debt of the parties. The wife further argues that the trial court could not assess an attorney fee because, she says, the trial court had no basis for finding her to be in contempt. Her final argument is that the trial court lost jurisdiction to modify the parties' property settlement in July 1999 and that its February 2002 order requring her to refinance the mobile home in her own name is therefore a nullity. Because the wife's issues are issues of law, we will review the trial court's judgment de novo. Keevanv. Keevan, 796 So.2d 379, 381 (Ala.Civ.App. 2001).
The husband urges us to affirm the trial court's judgment. He states that the trial court has the power to construe the terms of the divorce judgment, see Ex parte Littlepage, 796 So.2d 298 (Ala. 2001), a proposition with which we agree. However, the trial court "`must construe [those terms] so as to express the intent of the parties.'" Ex parteLittlepage, 796 So.2d at 301 (quoting Satterfield v. Satterfield,419 So.2d 601, 603 (Ala.Civ.App. 1982)).
In Ex parte Littlepage, our supreme court reversed this court's affirmance of a trial court's judgment requiring a husband to pay debts not specifically mentioned in the parties' separation agreement, which had been incorporated into their divorce judgment. Ex parte Littlepage, 796 So.2d at 302. Paragraph 15 of the trial court's judgment in Ex parteLittlepage addressed the payment of debts; it read:
 "`That each party shall be separately responsible for any debt, account, or expense titled in their respective names and shall forever hold the other harmless therefrom, except the parties agree that the balance on deposit in the Compass Bank savings account shall be expended to pay off the following accounts as the balance on each account existed on September 1st, 1997, namely: the Plaintiff's [the wife's] individual Visa account; the parties' joint Visa account; the Discover account; the McRae's account; and the account with Gayfers. Any item charged by either party on any of the above identified accounts subsequent to September 1st, 1997, shall be the separate debt of the party incurring the same. Any balance remaining from the savings account after payment of the identified accounts shall be equally divided between the parties. In the event the proceeds from the Compass Bank savings account are insufficient to pay the due balances in their entirety then, in such event, sufficient funds shall be withdrawn from the parties' Morgan Keegan Brokerage Account to extinguish in their entirety each of the above identified indebtednesses.'"
Id. at 299 (emphasis and bold typeface omitted).
Four months after the divorce judgment was entered in Ex parteLittlepage, the wife filed a motion for rule nisi, alleging that the husband had not paid the seven credit-card bills she had submitted to him for payment under paragraph 15 of the divorce judgment. Id. The husband responded, arguing, among other things, that the only accounts that the wife had discussed in the mediation that led to the settlement agreement were one individual Visa account, one joint Visa account, and one Discover account. Id. He said the bills submitted to him for payment included five individual Visa accounts and a Wachovia account and that those bills far exceeded the approximate $12,000 amount *Page 359 
the wife had represented that she owed. Id.
At trial, the husband presented the testimony of the mediator, who recalled that only two Visa accounts were discussed and that those accounts had an aggregate balance of approximately $12,000. Id. at 300. The mediator said that he did not recall, and his notes from the mediation did not indicate, that paragraph 15 should have read that the savings account and brokerage account were to be used to pay all "individual accounts" held by the wife as opposed to just a single "individual account." Id. at 300-01. The wife, however, maintained that she understood paragraph 15 to require the payment of all of her Visa accounts as opposed to one Visa account. Id. at 301.
The trial court entered a judgment ordering the husband to reimburse the wife for a portion of the "`debts that were not covered in theJudgment of Divorce which are in the [wife's] name, to wit: VISA BancAmerica, VISA Advanta, and First Card VISA.'" Id. at 301. The Exparte Littlepage court reversed this court's affirmance of the trial court's judgment, noting that the language in paragraph 15 was unambiguous and that it included only one individual Visa account. Id. at 302. The court explained that, although a trial court has the duty to determine whether an agreement is ambiguous and may consider parol evidence to explain or clarify an ambiguity, where the agreement contains no ambiguity, the trial court must determine the intent of the parties from the language of the agreement, without consideration of parol evidence. Id. at 301-02.
In the present case, the parties' 1999 divorce judgment fails to mention any debt associated with the mobile home. When a divorce judgment fails to address who will be responsible for the debts associated with the marriage, "[t]he party liable for his or her debts during the marriage would still be liable for those debts after the dissolution of the marriage and if the parties were jointly liable for debts during the marriage they would still be jointly liable for them after the divorce."Miller v. Miller, 391 So.2d 119, 120 (Ala.Civ.App. 1980). Thus, because the debt associated with the mobile home was a joint debt, the parties remained jointly liable for that debt under the 1999 divorce judgment.
The trial court apparently determined that the 1999 divorce judgment required the wife to assume the joint debt on the mobile home and to hold the husband harmless therefrom. We see no basis for such an implicit finding. Nothing in the 1999 divorce judgment is ambiguous, so parol evidence concerning its intended meaning would have been inadmissible. Exparte Littlepage, 796 So.2d at 302. The plain language of the 1999 divorce judgment states that the wife is awarded the mobile home, but it does not state that she must assume the debt associated therewith; therefore, she was not required by the divorce judgment to make the payments on the mobile home.
 "[W]hether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm."
Stack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App. 1994). Rule 70A, Ala. R. Civ. P., governs contempt proceedings in civil actions. Rule 70A(a)(2)(D) defines "civil contempt" as a "willful, continuing failure or refusal of any person to comply with a court's lawful writ, subpoena, process, order, rule, or command that by its nature is still *Page 360 
capable of being complied with." Because the 1999 divorce judgment did not order the wife to assume the debt associated with the mobile home and to hold the husband harmless therefrom, the wife's failure to pay the joint debt does not violate the divorce judgment. Accordingly, we see absolutely no basis for the finding of contempt. We reverse the trial court's judgment finding the wife in contempt; we also find that the trial court abused its discretion in awarding an attorney fee to the husband based upon the contempt citation, and we reverse the judgment awarding an attorney fee to the husband See Ala. Code 1975, § 30-2-54 (permitting the award, in the trial court's discretion, of an attorney fee in divorce actions or actions seeking the recovery of alimony, maintenance, or support where a contempt citation is issued); Norland v. Tanner, 563 So.2d 1055, 1057
(Ala.Civ.App. 1990).
The wife's remaining argument on appeal is that the portion of the trial court's 2002 judgment ordering her to refinance the mobile home in her sole name or to otherwise relieve the husband of responsibility for the debt on the mobile home and awarding the mobile home to the husband if she had not done so within 45 days of the judgment is an improper modification of the parties' 1999 divorce judgment. As she correctly notes, "`[a] court cannot modify property provisions [in divorce judgments], except to correct clerical errors, after 30 days from the final judgment.'" Ex parte Littlepage, 796 So.2d at 301 (quoting Hamiltonv. Hamilton, 647 So.2d 756, 759 (Ala.Civ.App. 1994)); see also McGuirev. Horton, 586 So.2d 9, 10 (Ala.Civ.App. 1991).
The trial court has attempted to alter the property-settlement provisions in the parties' 1999 divorce judgment. The trial court's 2002 judgment requires the wife to refinance the debt associated with the mobile home in her sole name or to otherwise relieve the husband of his liability for the debt on the mobile home or, in the event the wife does not do so within 45 days, it awards the mobile home to the husband This is an impermissible modification of the divorce judgment. See Ex parteLittlepage, 796 So.2d at 302. Therefore, we reverse that portion of the trial court's judgment attempting to modify the property-settlement provisions of the parties' 1999 divorce judgment.
REVERSED AND REMANDED.
YATES, P.J., concurs.
THOMPSON and PITTMAN, JJ., concur specially.
MURDOCK, J., concurs in the result.
[1] Although the judgment was entered on February 25, 2002, the wife's postjudgment motion was filed on March 25, 2002, and the trial court did not deny that motion until September 17, 2002, the wife's appeal is timely because the parties filed, on June 24, 2002, a statement indicating their agreement to extend the 90-day time limit of Rule 59.1, Ala. R. Civ. P.