506 So.2d 621 (1987)
Jerry Boguille, wife of/and Oscar BROWN, et al.
v.
NEW ORLEANS PUBLIC SERVICE, INC.
No. CA-5049.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1987.
Writ Denied June 12, 1987.
Dwan S. Hilferty, Israel M. Augustine, Jr., Augustine, Bagert, McConduit & Hilferty, *622 New Orleans, for Jerry Boguille, wife of/and Oscar Brown, et al.
Edward J. Castaing, Jr., William L. Crull, III, Carol Lynn Doskey, Dymond, Crull, Castaing & Doskey, New Orleans, for intervenors-appellants Bernard Dornblatt, Robert Philibert, Edward Giroir and Edward K. Ellis.
Caleb H. Didriksen, Andrew P. Carter, Eugene G. Taggart, Appeal Counsel, Jeffrey M. Lust, New Orleans, for appellant, New Orleans Public Service Inc.
Before SCHOTT, WARD and WILLIAMS, JJ.
WARD, Judge.
The present appeal is from a judgment which certified this lawsuit as a class action, with the plaintiffs representing "the class of New Orleans Public Service, Inc. ratepayers affected by power outages on January 21, 1985." The lawsuit, filed on January 23, 1985, alleges personal and property damage sustained by the plaintiffs because they were without electrical power for several hours when the temperature in New Orleans allegedly was 16 degrees. In granting the plaintiffs' motion for certification of the class, the Trial Judge denied numerous exceptions filed by NOPSI and by four individual intervenors who are NOPSI customers who oppose the class action. In their appeal of the certification, NOPSI and the intervenors reassert their objections to the class action by raising numerous legal and ethical arguments which they contend militate against that form of proceeding in this case. We reverse the certification of the class, holding that the Trial Judge abused his discretion in finding that the statutory requirements for a class action had been met and in concluding that a class action offers the most appropriate means of adjudicating the claims and defenses in this case.
The statutory requirements for maintaining a class action under Louisiana law are set forth in C.C.P. arts. 591-595 and have been extensively discussed in several opinions of our Supreme Court, most notably Stevens v. Board of Trustees, 309 So.2d 144 (La.1975); Williams v. State, 350 So.2d 131 (La.1977); State ex rel. Guste v. General Motors Corp., 370 So.2d 477 (La.1979); and McCastle v. Rollins Environmental Services, Inc., 456 So.2d 612 (La.1984). We deem it unnecessary for purposes of this opinion to review in depth the statutory requirements for a class action and the judicial interpretations of those requirements except as to the third requirement which we find lacking in this case. Suffice it to say that a class action is available only when: (1) a class exists which is so large that joinder of all members is impractical; (2) the parties to the suit are (a) members of the class and (b) situated to provide adequate representation for absent members of the class; and (3) a common character exists between the rights of the representatives and the absent members of the class. La.C.C.P. arts. 591, 592.
We believe the requisite "common character" is lacking in this case. A common character among the rights of the representatives and the members of the class means more than the mere sharing of a common question of law or fact. Stevens, 309 So.2d at 151. A class action is appropriate only when common questions of law or fact predominate over questions affecting only individual members of the potential class. Guste v. General Motors, 370 So.2d at 489. The objective of this requirement is "to identify the cases where a class action promises important advantages of economy of effort and uniformity of result...." McCastle, 456 So.2d at 616. Accordingly, before a class action can be certified the Trial Court must determine that, as a practical matter, "the class action will be clearly more useful than other available procedures for definitive determination of a common-based right." Stevens, 309 So.2d at 151.
In our opinion the alleged common character of the rights of the plaintiffs in this case is not sufficient to warrant use of the class action. This conclusion is supported by a practical analysis of the cause of action and the relief sought by the plaintiffs. The petition filed against NOPSI states a claim in tort, alleging failure to *623 deliver electrical power because of specified acts of negligence and other violations of the duty NOPSI owed to the plaintiffs. The petition further alleges injury caused by NOPSI's fault, including "loss of personal and business property, broken pipes and personal discomfort." Money damages are the sole relief sought.
These allegations along with other pleadings and the depositions of the class representatives do not show that rights of a common character predominate over individual issues in this case. NOPSI's duty to its customers and NOPSI's alleged negligence or other fault is the only issue common to all claims. If that issue is resolved in favor of the plaintiffs, then each member of the class must prove: 1) that NOPSI's fault caused his individual damages, and 2) the amount of those individual damages. We recognize that a class action may be appropriate for a mass tort such as a food poisoning, toxic chemical spill or plane crash, in which the element of quantum varies from plaintiff to plaintiff. See, for example, Williams v. State. In a mass tort class action, however, the causative link between the defendant's conduct and the plaintiffs' injuries is the same for all plaintiffs. The only issue that varies is the extent of damage for each individual member of that class. This case does not present such a situation.
In this case, the element of causation varies as well. There are individual issues of fact and law to be considered in determining whether the power failure caused the damages to each NOPSI customer. The record before us shows that many questions when answered as to one class member are not answered as to all and that the merits of each claim will turn on the particular facts and circumstances involved. NOPSI customers were without electrical power for varying lengths of time, ranging from a few minutes to several hours. The causative link between this power failure, which is not the same for all plaintiffs, and the alleged injuries such as broken water pipes, frozen plants, personal inconvenience, discomfort, and illness, must be proven under the specific facts of each claim. This proof is greatly complicated by NOPSI's assertion that in some claims there is a cause independent of any alleged negligence, that is the extremely cold temperatures, a cause of damages for which NOPSI cannot be held liable. Additionally, the availability and validity of defenses, such as that of comparative negligence, will depend upon the actions of each claimant under the particular circumstances of his alleged loss. This litigation thus presents many factual and legal questions which are not common to all members of the class. And although NOPSI's duty to each member of the class may be the same, that issue does not predominate over the questions which are distinct for each member of the class.
This case is, therefore, distinguishable from McCastle v. Rollins, which presented a situation appearing, at first blush, to be quite similar to that in the instant case. In McCastle, the Supreme Court held that a class action was appropriate for plaintiffs representing individuals harmed or inconvenienced by the defendants' land farming of hazardous wastes. Because it was a strict liability action, the predominate issue in McCastle was whether the defendants' activities deprived their neighbors of the enjoyment of their own land or caused them unreasonable inconvenience or damage. This relatively straightforward liability issue did not entail the complex and individualized questions which underlie the issue of NOPSI's liability in this case. There was no hint in the McCastle case that the defendants would assert an independent cause, such as NOPSI's assertion that the cold weather caused many of the plaintiffs' damages. Additionally, in McCastle the Court recognized that "with respect to the predominant liability issues, there will be no material deviations because such individual defenses as contributory negligence and assumption of the risk are wholly inapplicable." 456 So.2d at 620.
In reaching our decision, we have also considered that the difficulties likely to be encountered in the management of a class action is a pragmatic factor in determining whether a class action is appropriate. Guste v. General Motors, 370 So.2d at 490. *624 We recognize that, in order to facilitate management of class litigation, Article 593.1 provides for a plan of management which may include separate trials of distinct issues. Nevertheless, even were a class action otherwise appropriate in this case, Article 593.1 would not ease the problems of management which are presented by the individual questions of causation. The Article expressly authorizes trial of the issues of determination and assessment of damages after the issue of liability has been established in a separate trial. Tort liability, however, encompasses both fault and causation, and Article 593.1 does not allow trial on fault alone, separate from the question of causation. We do not believe the issues which may be tried separately under Article 593.1 should be further broken down to accommodate the management problems which would be encountered in litigating this suit as a class action. Fault and causation as elements of liability are too closely interrelated to be tried separately, and sound policy reasons dictate that a defendant should not be subjected to a determination of his fault before the court even considers whether that fault caused the plaintiffs' damages.
In sum, it is apparent that this litigation, if it were to proceed as a class action, would quickly disintegrate into an unmanageable multitude of small suits with individual issues and evidence, violating the policy of judicial efficiency which the class action is designed to serve. We therefore find the class action procedure inappropriate in this lawsuit and thus find it unnecessary to reach the other issues raised on appeal. We reverse the ruling of the Trial Court certifying the class action and remand the case to the Trial Court for further proceedings as an ordinary action. All costs of appeal to be paid by the plaintiffs.
REVERSED AND REMANDED.