833 So.2d 512 (2002)
Marilyn SPITZFADEN, et al.
v.
DOW CORNING CORPORATION, Dow Corning Wright, et al.
No. 98-CA-1612.
Court of Appeal of Louisiana, Fourth Circuit.
December 4, 2002.
Rehearing Denied January 15, 2003.
*513 Richard L. Root, Betsy J. Barnes, Barnes & Root, L.L.C., New Orleans, LA, for Plaintiff/Appellee.
Charles M. Steen, Stephanie G. McShane, Steen, McShane & Williamson, L.L.C., New Orleans, LA, and John W. Donley, Kirkland & Ellis, Chicago, IL, and H. Alston Johnson, III, Phelps Dunbar, L.L.P., Rouge, LA, for Defendant/Appellant.
(Court composed of Judge JAMES F. McKAY III, Judge DENNIS R. BAGNERIS, SR., and Judge MICHAEL E. KIRBY.).
DENNIS R. BAGNERIS, SR., Judge.
Defendant Dow Chemical appeals the trial court's judgment, which found that, notwithstanding the decertification of the class, the Phase I verdict was binding on all absent former class members and the eight individual plaintiffs.

*514 FACTS AND PROCEDURAL HISTORY
On February 12, 1992, Mary Spitzfaden filed suit individually and as the putative representative of a class of claimants comprised of Louisiana residents who received silicone gel breast implants and of non-residents whose breast implant surgeries were performed in Louisiana. The petition named as defendants Dow Corning Corporation, Dow Corning Wright Corporation, and Southern Baptist Hospital.[1] On February 20, 1992, plaintiffs added as defendants McGhan Medical Corporation, Mentor Corporation, Bristol Myers Squibb Company, Surgitek, Inc., Baxter Health Care Corporation, Natural Surgical Specialties, Inc., Bioplasty Corporation, and Heyer-Schulte Corporation.
On March 3, 1992, plaintiffs filed a Second Supplemental and Amending Petition naming nine new plaintiffs and one Jane Doe as class representative. On March 4, 1992, the trial court certified a class action, a decision that this Court affirmed in May 1993.
On March 3, 1994, the plaintiffs filed a Third Supplemental and Amending Petition adding forty-eight defendants, including Dow Chemical, to this matter. The Third Supplemental and Amending Petition also expanded the class by adding recipients of saline and polyurethane implants, and dropping any requirement of injury or future injury as a condition of membership in the class. After filing this Third Supplemental and Amending Petition, plaintiffs' counsel neither requested certification of their expanded class nor certification of the claims against any of the forty-eight new defendants. On March 10, 1995, plaintiffs filed a Fourth Amended Petition, which added new parties and brought the total number of defendants to more than a hundred.
In May 1996, the trial court entered a Case Management Order scheduling a trial against defendant Dow Chemical for March 1997. On March 13, 1997, two weeks before trial, the trial court issued another Case Management Order, which divided the trial into four phases. The jury was to be dismissed after the trial of Phase II. The order called for common issues to be tried in Phase I, listing the following nine issues as to be tried in Phase I:
(1) Whether defendant, Dow Chemical, was negligent in its researching and testing of silicones.
(2) Whether defendant, Dow Chemical, was negligent in failing to adequately disclose the risks and dangers of using silicones in the human body.
(3) Whether defendant, Dow Chemical knowingly or intentionally kept silent about, concealed or suppressed information about the risks and dangers of using silicones in the human body.
(4) Whether the information was material.
(5) Whether defendant, Dow Chemical knowingly or intentionally made any false or misleading statements about the safety or quality of using silicone in the human body.
(6) Were the above statements material.
(7) Whether defendant, Dow Chemical intentionally or willfully conspired or acted in concert with Dow Corning in doing any wrongful act or omission in connection with using silicones in the human body.
(8) Whether defendant, Dow Chemical aid and abet any wrongful acts or omissions of Dow Corning in connection with using silicones in the human body.

*515 (9) Whether defendant Dow Chemical's conduct kept breast implant recipients from being able to make informed decisions about or giving their informed consent to the insertion of Dow Corning silicone breast implants into their bodies.
The order reserved causation and damage issues for Phase II, listing the following four issues as to be tried in Phase II:
(1) Did silicones cause the injuries complained of in these plaintiffs [the class representatives]?
(2) Were the plaintiffs aware of the risks and danger of silicone in the body?
(3) If plaintiffs had known of risks would they have had the implants?
(4) Whether individual class reps had damages?
The order then called for Class Notice in Phase III, and the adjudication of damages for class members in Phase IV.
On March 28, 1997, the trial commenced and was tried intermittently until August 14, 1997. On August 18, 1997, a jury verdict was returned, which consisted of affirmative answers to seven interrogatories:
1. Do you find that Dow Chemical did research and/or testing of silicone for human implantation for Dow Corning?
2. Was Dow Chemical negligent in the above referenced testing and/or research of silicone?
3. Did Dow Chemical knowingly or intentionally remain silent, conceal or suppress information about the harms and dangers of using silicone in the human body?
4. Was the probability of that type of harm a risk which reasonable women would consider in deciding to be implanted?
5. Did Dow Chemical knowingly or intentionally make any false or misleading statements about the safety or quality of using silicone in the human body?
6. Was/Were the statement(s) of the nature that a reasonable woman would consider in deciding to be implanted?
7. Did Dow Chemical intentionally or willfully conspire or act in concert with Dow Corning in doing any wrongful act or omission in connection with using silicone in the human body?
On September 25, 1997, less than a month after the jury verdict was returned, Dow Chemical filed a motion in the trial court for decertification of the class. On December 1, 1997, the trial judge signed a judgment, which granted Dow Chemical's motion for decertification. In the trial judge's reasons for decertifying the class action, she stated, in pertinent part:
There are simply too many individual issues due to the fact that members of the class were implanted with various types of breast implants, at different times in varying degrees and the implants have caused different diseases. Additionally, there are individual questions regarding each class members [sic] lifestyle and medical condition which are paramount to causation. The time period whereby the alleged torts were committed spans a thirty year period thus, requiring a different legal standard to be used for each plaintiff....
* * *
This case is complicated more so by the fact that there are over 40 defendants and individual questions of liability would have to be tried for each defendant or subclass. Each subclass would *516 encompass still further individual questions of liability with that subclass....
Thus, this Court finds that the circumstances to maintain the class action in this instant case does not exist.
On December 8, 1997, plaintiffs filed two motions: the first was a Motion to Clarify, Reform, Amend, Rectify, or Modify Judgment of Decertification and/or Motion for New Trial and/or Reconsideration, and the second was a Motion for Recognition of Binding Effect of Phase I Verdict on all Dow Chemical Subdivision Class Members. Thereafter, Dow Chemical filed a motion to vacate the Phase I verdict as well as exceptions of improper venue and improper cumulation of actions relative to the eight individual plaintiffs.
On January 5, 1998, the trial judge denied plaintiffs' motion for a new trial or reconsideration of the decertification ruling. Plaintiffs sought supervisory relief from this Court, as well as the Supreme Court, with respect to the denial of plaintiffs' motion for a new trial or reconsideration of the decertification ruling, but the writs were denied. Thereafter, plaintiffs appealed the December 1, 1997 judgment, which decertified the class action. They later dismissed the appeal. Accordingly, the December 1, 1997 judgment, which decertified the class, is final and thus is not before this Court today.
On January 12, 1998, the trial judge denied the exception of improper venue, denied the motion to vacate the Phase I verdict, but granted the exception of improper cumulation of actions. On that same day, the trial judge ruled that, notwithstanding the decertification of the class, the Phase I verdict was binding on all absent former class members, and issued a per curiam containing her reasons for that ruling. Specifically, the per curiam stated as follows:
Plaintiffs in this case have requested that this court issue a document addressing the binding effects of the order decertifying the class action made the subject of this suit.
On March 13, 1997, the Court issued a case management order dividing the Dow Chemical sub-class trial into four phases. Phase I of the trial was to deal with the conduct of Dow Chemical and the materiality of any alleged omission or alleged misrepresentation; Phase II was then to address the individual eight plaintiffs that the steering committee determined would be class representatives; Phase III then envisioned a Class Notice, and the adjudication of damages for class members as Phase IV.
The Case Management Order held, at the conclusion of the list of issues common to Dow Chemical Sub-Class, "These findings will be binding on all members of the Dow Chemical Subclass." At the time that the CMO was signed, there was a viable class action. The ruling of this Court at that time was good and lawful. It affected the substantive rights of the women who made up the Dow Chemical subclass and Dow Chemical. It is the opinion of this Court that when the jury returned a verdict in favor of the plaintiffs that the jury verdict was binding on all women of the subclass and on Dow Chemical. It is the opinion of this Court that while the jury verdict in Phase I did not create an obligation owed to the plaintiffs, in and of itself, it certainly decided issues of materiality and culpable conduct that were common among all of the women of the Dow Chemical subclass, and vested those women with certain rights.
On August 18, 1997 the jury returned with a verdict in favor of plaintiffs and against defendant, Dow Chemical. That jury verdict determined that Dow Chemical had engaged in conduct which *517 involved negligent testing, intentional concealment, suppression of information, and misrepresentation of material risk in using silicone in the human body, and that Dow Chemical acted in concert with Dow Corning in connection to wrongful acts of commission and omission. It was not a judgment on the merits.
The jury returned a special verdict in which it determined certain facts. La.Code of Civil Procedure 1812(D) provides "... the Court shall enter a judgment in conformity with the jury's answers to ... special questions and according to applicable law." The law recognizes that the jury returns a verdict and that the court enters the judgment even in instances where there is a general verdict accompanied by a[sic] interrogatories.
Code of Civil Procedure Article 593.1(B) makes reference to a decision on the merits. While Blacks Law Dictionary Fifth Edition defines the word decision as a popular rather than technical or legal word, and a comprehensive term having no fixed, legal meaning, it does go on to define [d]ecision on the merits as "A decision ... passing on a controversy with respect to the interpretation thereof which bars subsequent suit on the same cause of action." As of December 1, 1997 there was no judgment so there was no decision on the merits only a special jury verdict. The verdict had not been made the judgment of the Court.
On December 1, 1997, this court entered an order decertifying the Spitzfaden class action. It is the opinion of this Court that the decertification of the class was a procedural measure. It was not the intent of this Court to ex post facts disallow the validity of the Phase I verdict.
La.Code of Civil Procedure Article 5051 provides that "The articles of this Code are to be construed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves." La. C.C.P. Art. 593.1 is an article of procedure and cannot be used as a mechanism to defeat or deny a party of a right that it may have. [Arguable the right attached at the signing of the Case Management Order.] It is the opinion of this Court that any affect upon the substantive rights of the parties to this litigation as a result of decertification can only be prospective.
La.Code of Civil Procedure 593.1(B) [p]rovides that at any time after the process of certification "... before decision on the merits, the Court may ... restrict or otherwise redefine ... the issues to be maintained in the class action." In [d]ecertifying the class, this Court did not dismiss the action. It is the Opinion of this Court that the effect of its December 1, 1997 order decertified the Spitzfaden class prospectively, and restricted the issues to be maintained in the class (more particularly the subclass) to those already determined by the trier of fact.
The order of decertification did not dismiss the action. The Court's order of December 1, 1997 did not have retroactive or ex post facto effect on substantive rights acquired by the parties pursuant to the Phase I jury verdict. Therefore because the action was not dismissed the Court is of the opinion that it has the authority to reduce to judgment the Phase I verdict at this time pursuant to La. C.C.P. 593.1(D) allows [sic] the court to sign a judgment after trial of any issue.
The Court does not view the Phase I jury determination to be a judgment on *518 the merits. It is a finding of fact by the fact finder.
It is the opinion of this Court that the plaintiffs must proceed with their individual causes of action where they need only to prove reliance, causation, and damages. (citation omitted). It does not appear that the concept of fraudulent activity or materiality being proven on a class wide basis and reliance and causation proven on an individual basis is novel to the class action.
While Collateral Estoppel may not be recognized under Louisiana law[,][t]he doctrine of issue preclusion is recognized. The issues of Dow Chemical's alleged wrongdoing and materiality were decided on August 18, 1997 by the jury and according to the law of the case the jury verdict is binding on all parties to the Dow Chemical Sub-class. The matter of reducing the verdict to judgment at this time is pro forma, or house cleaning.
It would appear to me that the Plaintiff's steering Committee must notify the members of the Dow Chemical subclass of the existence of their rights and of the decertification to afford them an opportunity to pursue their cases individually.
On January 13, 1998, the trial judge signed a judgment reciting the jury conclusions and ordered, "that the above and foregoing judgment is binding on Dow Chemical Corporation and the woman of the Dow Chemical sub-class." Thereafter, Dow Chemical sought orders of suspensive appeal of the venue ruling, the denial of the motion to vacate the Phase I verdict, and the judgment making the Phase I verdict binding on all absent former class members. On January 14, 1998, the trial judge denied the first two requests[2], but granted Dow Chemical's suspensive appeal as to her judgment, which made the Phase I verdict binding on all absent former class members.[3]
On appeal, Dow Chemical briefed three assignments of error, with subparts, as follows:
1. The trial judge erred in making the jury verdict binding, after decertifying the class, on all of the absent former class members, or even on the eight individual plaintiffs, in light of the following procedural defects:
(a) The trial of liability and damages was bifurcated without the appellant's consent, in violation of Article 1562 of the Code of Civil Procedure;
(b) Evidence was admitted before the jury which would not have been admissible in an individual action rather than a class action;
(c) The alleged fault of the other (Corning, Inc.) of the manufacturer was not before the jury because it had been dismissed before trial by a summary judgment that was subsequently reversed after the trial was completed;
(d) Arguments by plaintiffs' counsel and comments by both plaintiffs' counsel and the trial judge, alluding to class action status at the time of the trial, were inappropriate for an individual action;
(e) The trial was conducted and interrogatories were posed to the jury *519 under a Case Management Order designed for a class action and not for an individual action;
(f) The decertification ruling should have had its effect at the time of the entry of the judgment and not at the time of the jury verdict; and
(g) The trial court lacked jurisdiction to apply the jury verdict to non-parties who were former members of a decertified class.
2. The trial judge erred in failing to conduct proceedings in which a fair and reasonable deliberation of the issues by the jury could occur. Specifically, the trial judge erred by:
(a) Permitting plaintiffs' counsel to present a "stealth" case against The Dow Chemical Company by continued blurring of any distinctions between Dow Corning Corporation and The Dow Chemical Company, and by admission of evidence about the conduct of Dow Corning as manufacturer of the breast implants in question, despite her own pre-trial ruling that The Dow Chemical Company was not a manufacturer;
(b) Permitting plaintiffs' counsel to bring before the jury inadmissible evidence by the use of bad faith questions, by improper use of inadmissible documents and by the use of improper remarks during opening and closing arguments, and then in denying a post-trial motion for a new trial raining these issues;
(c) Using jury instructions which compounded the error in (a) above; and
(d) Reversing her mid-trial granting of a mistrial motion, which followed a long pattern of inappropriate conduct by plaintiffs' trial counsel and which was preceded by a very unusual secret polling of the jury by the trial judge, and when no proper motion to reverse her ruling was ever filed.
3. The trial judge erred by concluding that the Dow Chemical Company owed a duty to the plaintiffs even though it never manufactured breast implants; or alternatively, erred in entering a judgment on the jury verdict against the Dow Chemical Company when there was no evidence upon which reasonable jurors could conclude that a duty to the plaintiffs had been breached.

DISCUSSION
Issue One: Whether the trial of liability and damages was properly bifurcated, and whether the trial judge erred when she polyfurcated liability into issues of conduct and causation.
We will first address Dow Chemical's argument that the trial of liability and damages was bifurcated without its consent, and thus is in violation of La. C.C.P. article 1562. Additionally, Dow Chemical argues that the trial judge was in clear violation of article 1562(A) when she bifurcated the issue of liability by dividing the issues of conduct and causation.
La. C.C.P. article 1562, applicable in ordinary cases, provides that, "with the consent of all parties, separate trials on the issues of liability and damages" may be conducted if all parties consent prior to the trial. However, La. C.C.P. article 593.1(C)11[4] (repealed 1997) made class actions *520 an exception to the ordinary rules and granted a class action trial court the ability to bifurcate without consent of all parties. Specifically, La. C.C.P. art. 593.1(C) provides:
C. After determining that the pending action is appropriate for litigation as a class action, the court may, on its own motion or on the motion or recommendation of any party, adopt a plan for the management of the class action litigation, which may include provisions for subdivision of the action or separation of the issues therein raised, to which these rules of procedure shall be applicable as though each were a separate action. The management plan may provide for separate trials of separate issues and, if jury trial has been requested and is otherwise permissible, each separate trial may be heard before the same or another jury as the court may direct in the interest of justice. The management plan may provide for separate trials of the following issues in the order herein set forth:
(1) Liability for all damages.
(2) Determination of any item of damage common to the class and the basis for assessment thereof.
(3) Assessment of common damages on the basis determined in (2) above or on such basis as may be appropriate in the absence of any prior determination of the basis thereof.
(4) Determination and assessment of individual damages not common to the class, either in one trial or in a series of trials involving one or more members of the class.
Thus, La. C.C.P. art. 593.1(C) permits a court, without consent, to bifurcate liability and damages for trial of a class action. Accordingly, we find no merit to Dow Chemical's argument that its consent was needed to bifurcate the class action into issues of liability and damages.
However, we find that La. C.C.P. art. 593.1(C) does not authorize a court to polyfurcate liability into conduct (fault) and causation. This Court, in Brown v. New Orleans Public Service, Inc., held that La. C.C.P. art. 593.1(C) does not authorize a trial court to polyfurcate a cause of action into its various elements for separate trial of each element. 506 So.2d 621, 624 (La.App. 4 Cir. 4/9/87). Specifically, this Court stated, in pertinent part:
We recognize that, in order to facilitate management of class litigation, Article 593.1 provides for a plan of management which may include separate trials of distinct issues. Nevertheless, even were a class action otherwise appropriate in this case, Article 593.1 would not ease the problems of management which are presented by the individual questions of causation. The Article expressly authorizes trial of the issues of determination and assessment of damages after the issue of liability has been established in a separate trial. Tort liability, however, encompasses both fault and causation, and Article 593.1 does not allow trial on fault alone, separate from the question of causation. We do not believe the issues which may be tried separately under Article 593.1 should be further broken down to accommodate the management problems which would be encountered in litigating this suit as a class action. Fault and causation as elements of liability are too closely interrelated to be tried separately, and sound policy reasons dictate that a defendant should not be subjected to a determination of his fault before the court even considers *521 whether that fault caused the plaintiffs' damages. (Emphasis Added)
In sum, it is apparent that this litigation, if it were to proceed as a class action, would quickly disintegrate into an unmanageable multitude of small suits with individual issues and evidence, violating the policy of judicial efficiency which the class action is designed to serve.
Brown, 506 So.2d at 624. Thus, this Court in Brown determined that La. C.C.P. art 593.1(C) restricts separation to a single trial on liability, followed by one or more trials on damages.[5]Id. As such, we find that the trial judge was in clear violation of La. C.C.P. art. 593.1 when she polyfurcated liability into the issues of conduct and causation. Nonetheless, we will now address the issue of whether the trial judge erred by making the jury verdict binding on all absent former class members, or even on the eight individual plaintiffs, after decertifying the class.
Issue Two: Whether the verdict of a jury in only one phase of a bifurcated proceeding tried as a class action be made applicable to non-parties who are former class members when the class action is decertified after the verdict, or even to the eight individual plaintiffs who were the former class representatives.
Defendant Dow Chemical argues that the judgment applying the jury verdict in the first phase of four phases of a class action to former class members, rendered after a judgment of decertification, is erroneous and must be reversed on procedural grounds alone, as to the former class members. Moreover, Dow Chemical argues that the trial of the case as a class action makes it unjust and indeed impossible even to make the jury verdict binding as to the eight individual plaintiffs.
Plaintiffs contend that Phase I of the Dow Chemical sub-class was at all times a properly constituted class action and that it remains so now. Specifically, plaintiffs argue that Phase I of the Dow Chemical sub-class was proper when created by the trial court's Case Management Order of March 13, 1997, that it was a proper class action during the entirety of the trial on Phase I, which resulted in a plaintiff verdict on August 18, 1997, and that it remained a properly constituted class action during and after the trial court prospectively decertified the entirety of the remaining action on December 1, 1997. For the reasons below, we find no merit to plaintiffs' arguments that Phase I sub-class was and is maintained and that the verdict of the fact finder on those issues was proper.
La. C.C.P. art. 593.1(B) (repealed 1997) gives authority to a trial judge to recall a class certification after a trial on the merits, but before a ruling on the merits of the class claims. Specifically, La. C.C.P. art. 593.1(B)[6] provides:
B. In the process of class certification or at any time thereafter before decision on the merits, the court may alter, amend or recall its certification and may enlarge, restrict, or otherwise redefine the constituency of the class or *522 the issues to be maintained in the class action.
In this case, the trial judge recalled the class certification after trial on the merits, after the jury verdict, but before a ruling on the merits of the class claims. The trial court's Judgment states:
After considering the pleadings, memoranda and evidence submitted, this Court rules in favor of the defendants and against the plaintiff and hereby recalls the class action.
IT IS ORDERED, ADJUDGED, AND DECREED that the Motion to Decertify Class Action is hereby granted.
The trial judge gave extensive reasons for finding that this class action must be decertified. In pertinent part, the trial judge stated:
This Court has found in light of the recent Louisiana Supreme Court decision in Ford v. Murphy Oil USA, Inc., No. 96-C 2913 slip op[., 703 So.2d 542] (La. Sept. 9, 1997) that this class action must be decertified.
* * *
The discussion in Ford regarding numerous defendants directly impacts the case at bar. The Ford case stipulates that [sic]that only mass torts "arising from a common cause or disaster" may be appropriate for class certification, depending on the circumstances. Complicating the issue in this instance is the existence of different categories of defendants. Some defendants are manufacturers and some are not. Plaintiffs' tort claims arise from the alleged individual acts of defendants and the defendants' acts are not common to all plaintiffs nor is each defendant's act common to other defendants.
Turning to the plaintiff's contention that maintaining the class certification in place while expressly acknowledging each subdivision as a separate class action is an error. This very contention defeats the purpose of a class action. This case is complicated more so by the fact that there are over 40 defendants and individual questions of liability would have to be tried for each defendant or subclass. Each subclass would encompass still further individual questions of liability with that subclass.... Therefore, the many individual issues of liability will still be duplicated under a subclass condition.
Thus, individual questions continue to increase on both plaintiff and defendant sides, outnumbering the common questions.
Thus, this Court finds that the circumstances to maintain the class action in this instant case does [sic] not exist.
IT IS ORDERED, ADJUDGED, AND DECREED that the Spitzfaden class action is hereby decertified.
After reading the judgment with the incorporated reasons, we find that the trial judge decertified the entire Spitzfaden class action. Thus, we find no merit to plaintiffs' argument that part of the case is decertified, and part is not. Accordingly, as of December 1, 1997, this class action was decertified.
We next address the issue of whether the trial judge erred by making the jury verdict binding on all absent former class members, or even on the eight individual plaintiffs, after decertifying the class.
La. C.C.P. art. 593.1(A) provides:
A. After commencement of an action by or on behalf of parties alleged to be members of a class, the court, on its own motion, or on the motion of any party or on trial of any exception directed to such *523 issue, shall determine whether the action may be properly maintained as a class action as a prerequisite to any further proceedings therein. If the court finds that the action should be maintained as a class action, it shall certify the action accordingly; otherwise the action shall be dismissed. The court may permit amendment of the pleadings in the action to permit maintenance thereof as an ordinary proceeding on behalf of parties expressly named therein. (Emphasis added)
On application for rehearing in Ford v. Murphy Oil, U.S.A., Inc., 96-2913 (La.10/10/97), 710 So.2d 235, Chief Justice Calogero commented on La. C.C.P. art. 593.1(A):
In their application for rehearing, plaintiffs seek "clarification" of this Court's dismissal of the class action petition. Specifically, plaintiffs' inquiry concerns whether, notwithstanding the dismissal of the class action, the individual claims of the named petitioners can proceed as an ordinary action. I agree with the majority that this matter should be remanded to the district court judge for consideration.
Louisiana Code of Civil Procedure article 593.1 expressly provides that "the action shall be dismissed" if the court finds that the action should not be maintained as a class action. However, article 593.1 further provides that "[t]he court may permit amendment of the pleadings in the action to permit maintenance thereof as an ordinary proceeding on behalf of parties expressly named therein." Thus, even though article 593.1 mandates the dismissal of "the action" where maintenance as a class action is inappropriate for whatever reason, the article contemplates some character of preservation of the individual claims of the named plaintiffs, at least in some cases, even after the dismissal. This presents an unusual circumstance, as generally when an action has been dismissed, there are no surviving pleadings to amend.
I write separately to emphasize that article 593.1 expressly sanctions this unusual circumstance by giving the district court judge the discretion to allow the pleadings to be amended even after dismissal of the action to permit the individual claims of the named plaintiffs to proceed as an ordinary action. Because these amended pleadings will relate back to the originally filed petition, prescription of the individual claims will not be an issue provided that the original petition was timely filed.
Following our Supreme Court's analysis of La. C.C.P. art. 593.1, we find that the trial judge could not rule on non-named plaintiff class members after decertification without amendment to pleading or a new suit being filed. Accordingly, the trial judge erred when she signed the January 13, 1998 judgment, which recited the jury conclusions and ordered that the judgment be binding on Dow Chemical Corporation and the woman of the Dow Chemical sub-class.
Although no amendment was necessary for the trial judge to rule on the eight named plaintiffs, we nonetheless find that the status of the case as a class action allowed the admission of evidence that would otherwise have had marginal relevance to the case of the eight named plaintiffs. As stated above, the trial judge was in clear violation of La. C.C.P. art. 593.1 when she polyfurcated liability into the issues of conduct and causation, and we find that judgment on the conduct of Dow Chemical, without the issue of causation to these eight individuals, is highly prejudicial to Dow Chemical. Accordingly, we *524 feel compelled to reverse the judgment making the jury verdict binding on Dow Chemical as to the eight individual plaintiffs and the absent former class members.
We find it unnecessary to rule on other issues raised on appeal by the defendant Dow Chemical, which are rendered moot by our action in reversing the judgment making the jury verdict binding on Dow Chemical as to the eight individual plaintiffs and the absent former class members.
In conclusion, we reverse the judgment of the trial court, which found the jury verdict (in favor of plaintiffs) binding on all absent former class members, and the eight individual plaintiffs, after decertifying the class. We remand the case to the trial court for further proceedings as an ordinary action.
REVERSED AND REMANDED.
NOTES
[1] Southern Baptist Hospital was later dismissed from the suit.
[2] Dow Chemical applied for writs with respect to the two denials of its request for orders of suspensive appeal, but these applications were denied by this Court on March 12, 1998.
[3] Phase II of this case against Dow Chemical never took place, and the jurors were discharged from their duties on November 13, 1998.
[4] Although Article 593.1 was repealed as of July 1, 1997, the article remains effective for any class actions filed before that date. The issues formerly set forth in Art. 593.1 are now addressed in La. C.C.P. art. 592.
[5] This conclusion is supported by the corresponding concept in La. C.C.P. art. 1562, for ordinary proceedings, which calls for one trial for overall liability and a separate trial for damages. See La. C.C.P. art. 1562(A).
[6] La. C.C.P. art. 592A(3)(c), which sets forth the current procedure scheme for class action certification, maintains the old rule that "... before a decision on the merits of the common issues, the court may alter, amend, or recall its initial ruling on certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action."