PENZATO, J.
1 ¡¡Plaintiffs, Robert “Bert” Fontcuberta and MapMan, LLC (MapMan),[1] appeal a judgment denying a class certification against Defendants, Cleco Corporation,[2] Cleco Power, LLC (Cleco), and Pike Electric, LLC (Pike). For the reasons stated herein, we affirm.
FACTS AND PROCEDURAL HISTORY
On December 11, 2013, a vehicle accident occurred that involved an automobile striking a utility pole adjacent to Ochsner Boulevard in St. Tammany Parish. As a result of the accident, plaintiffs and a number of other residents/businesses lost electrical power. The utility pole belonged to Cleco. The pole supported a 34.5 kV circuit (Circuit 4001) and a 13.2 kV circuit (Circuit 4186C). The force of the impact dislodged a wire on Circuit 4001, the higher voltage distribution circuit, which contacted or came into proximity with a wire on Circuit 4186C, the lower voltage circuit. This resulted in an abnormal electrical event, or “fault.” As a result of the accident, approximately 2000 Cleco customers lost power. Specifically, some customers on Circuit 4001 lost power, and all of the customers on Circuits 4186A, 4186B, and 4186C lost power. Each of those four circuits had four “phases,” or distribution wires. Generally, each customer receives power from only one phase, and customers in the same neighborhood may be served by different phases.
Pike provides skilled labor to customers such as Cleco to perform electrical maintenance and repair work. Pike’s crew foreman, Mike Morel, Jr., testified that | she learned of the accident while his crew was at another job. Cleco called and requested that his crew assist Cleco with the pole after the accident. Morel explained that when he arrived on the scene, the line was already de-energized, and his crew changed two lightning arresters, also known as surge protectors. Cleco and Pike performed repairs and “switching” operations to restore power in stages and approximately two hours after the accident. Mr. Morel testified that Pike was not involved in the actual restoration of power, and Pike’s crew was not present when the power was restored.
*240 Mr. Morel[3] also explained that the surge took place when the 34.5kV line (higher-voltage line) fell- -on the 18.2 kV line (lower-voltage line), and that the surge is created when the electricity attempts to return to the source, the main substation.
Plaintiffs allege that a surge occurred during the restoration of power. Plaintiffs specifically claim that defendants, Cleco and Pike, an independent contractor, while attempting to restore the power, “performed the restoration operation in a negligent fashion so- that a massive electrical surge was created, damaging wiring, appliances, buildings, and other things belonging to plaintiffs and other residents/businesses/customers of defendants.” The plaintiffs alleged that the “electrical surge destroyed appliances, damaged electrical systems, started fires, and caused other harm and losses.”
Cleco maintains that any surge would have coincided with the automobile crash that damaged the utility pole, as opposed to the restoration of power that followed. Cleco further asserts that the plaintiffs’ expert also agreed that the surge occurred prior to the restoration.
| ¿Plaintiffs filed -a motion to certify the class on- January 21, 2015. The trial court held a class certification hearing on May 11, 2016. On the same date, plaintiffs filed a motion to- amend the class action petition. The motion sought to amend paragraph 5 of the original petition to read:
Due to defendants’ negligence in designing, installing, maintaining and/or repairing their electrical equipment, and/or due to defendants’ negligence in restoring power following the car accident, a massive electrical surge was created, damaging wiring, appliances, buildings, and other things belonging to plaintiffs and other residents/businesses/customers of defendants.
The trial court issued written reasons on June 28, 2016, and signed a judgment on July 21,2016, denying plaintiffs’ motion for class certification,' On June. 29, 2016, the trial court held a hearing on the motion for leave to amend the class certification.[4] Because the trial court had already denied the class certification and because plaintiffs sought to add a new theory of liability after the deadlines set by the trial court, the trial court denied the motion to amend the petition for class certification and signed a judgment in accordance therewith on August 30, 2016. This appeal was originally brought referencing the date of June 28, 2016, the date of the'trial court’s written reasons. This court issued a rule to show cause, and the trial court issued a new appeal from the correct date of the July 21, 2016 judgment denying class certification.[5] The only judgment being appealed is the July 21, 2016 judgment denying the class certification. No appeal has been taken from the August 30, 2016 judgment denying the motion to amend the class certification.
[.ERRORS
Plaintiffs claim the trial court erred in finding that they did not meet their bur *241 den of satisfying the requirements to certify a class of commonality, numerosity, typicality, adequacy of representation, and predominance.
LAW AND DISCUSSION
A trial court has wide discretion in deciding whether to certify a class. An appeal of a judgment addressing class certification is reviewed under the manifest error standard; the trial court’s factual findings can only be reversed upon finding, based on the entire record, no reasonable factual basis for the factual finding and the fact finder is clearly wrong. The ultimate decision of whether to certify the class is reviewed under the abuse of discretion standard. Baker v. PHC-Minder, L.P., 2014-2243 (La. 5/5/15), 167 So.3d 528, 538.
The only issue to be considered by the trial court when ruling on certification, and by this court on review, is whether the case at bar is one in which the procedural device is appropriate. In determining-the propriety of such action, the court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood they ultimately will-prevail on the merits, but whether the statutory requirements have been met. Baker, 167 So.3d at 537.
Under Louisiana law, the requirements for class certification are set forth in La. C.C.P. art. 591. Article 591(A) provides five threshold prerequisites, often referred to as numerosity, commonality, typicality, adequacy of representation, and objective definability of class:
A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that join-der of all members is impracticable.
(2) There are questions of law or fact common to the class.
I fi(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of, ascertainable criteria, such that the court may determine the constituency of .the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This prerequisite shall not be satisfied if it is necessary for the court to inquire into the merits of each potential class member’s cause of action to determine whether an individual falls within the defined class.
Besides meeting the five prerequisites above, plaintiffs must meet one of the requirements of Article 591(B) depending on the type of class action sought. Plaintiffs seek certification under Article 591(B)(3), which provides:
(3)The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent-to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
*242 (d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification:
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation.
 Furthermore, “class action rules do not set forth a mere pleading standard; rather, a party seeking class certification must affirmatively demonstrate his compliance with the Rule-that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.” Price v. Martin, 2011-0853 (La. 12/6/11), 79 So.3d 960, 967 (citation omitted). While any errors to be made in deciding class action issues should, as a general rule, be in favor of and not against the maintenance of the class action because a class certification is always subject to modification or decertifi-cation if later developments so require, see La. C.C.P. art. 592(A)(3)(c), that general rule cannot and should not be used as a substitute for the rigorous analysis required to determine whether the prerequisites of Louisiana’s class action provisions have in fact been satisfied. Price, 79 So.3d at 967.
The Legislature has specifically provided, emphasizing the commonality and predominance requirements, that class “[cjertification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class.” La. C.C.P. art. 591(C); see also Baker, 167 So.3d at 539. “[TJhe mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover does not preclude class certification.” Baker, 167 So.3d at 539 (citation omitted).
The burden of establishing that the statutory criteria have been satisfied falls on the party seeking to maintain the class action. Baker, 167 So.3d at 539 (citation omitted). Therefore, the plaintiffs were required to prove the five prerequisites of Article 591(A), namely numerosity, commonality, typicality, adequacy of the representative parties, and an objectively definable class. Likewise, they were required to prove common questions of law or fact predominate over individual issues and the class action is superior to any other method for resolving the controversy fairly and efficiently under Article 591(B).
Commonality
The commonality prerequisite requires a party seeking class certification to show that “[tjhere are questions of law or fact common to the class.” La. C.C.P. art. 591(A)(2); Baker, 167 So.3d at 542. The mere existence of common questions, however, will not satisfy the commonality requirement. Commonality requires a party seeking certification to demonstrate the class members’ claims depend on a common contention, and that common contention must be one capable of class-wide resolution—one where the “determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.” Price, 79 So.3d at 969 (citation omitted). “To satisfy the commonality requirement, there must exist ‘as to the totality of the issues a common nucleus of operative facts.... ’ A common question is one that, when answered as to one class member, is answered as to all of them.” Price, 79 So.3d at 969 (citation omitted).
*243 In the context of mass tort litigation, the Louisiana Supreme Court has found that in order to meet the “commonality” requirement, “each member of the class must be able to prove individual causation based on the same set of operative facts and law that would be used by any other class member to prove causation.” Brooks v. Union Pacific Railroad Co., 2008-2035 (La. 5/22/09), 13 So.3d 546, 559. When plaintiffs’ individual liability issues predominate over the issue of the defendant’s duty, a class action certification is not appropriate. See Banks v. New York Life Ins. Co., 1998-0551 (La. 7/2/99), 737 So.2d 1275, 1281, cert. denied, Major Banks v. New York Life Ins. Co., 528 U.S. 1158, 120 S.Ct. 1168, 145 L.Ed.2d 1078 (2000). When there are a myriad of individual complaints that ultimately will require plaintiff-by-plaintiff adjudication of liability issues, this will militate against a finding of predominance of common character and the superiority of the class action procedure. See Banks, 737 So. 2d at 1281-82.
We agree with the trial court, that to establish commonality, the plaintiffs in this matter must present evidence not simply that a power surge occurred because of the fault of the defendants, but that the defendants had a duty to avoid causing a |flpower surge; that this duty was breached; and that the breach caused plaintiffs to sustain property damage. See Price, 79 So.3d at 969-970. Furthermore, one class member must be able to prove the cause of his injury or damage based on the same set of operative facts as would be offered by every other member of the class. See Brooks, 13 So.3d at 561.
We note, as did the trial court, that other jurisdictions have rejected the class action format for suits based on interruption of power. In Brown v. New Orleans Public Service, Inc., 506 So.2d 621 (La. App. 4 Cir.), writ denied, 508 So.2d 67 (La. 1987), utility customers sued for power interruptions during a cold snap. Brown reversed the trial court’s granting of class certification, explaining that, although the alleged negligence was common to all claims, there were too many individual differences in proof of causation and the availability of defenses like comparative negligence, as well as the amount of damages, to warrant a finding of predominance' of common facts and issues. Brown, 506 So.2d at 623.
In LaFleur v. Entergy, Inc., 1998-344 (La.App. 3 Cir. 12/9/98), 737 So.2d 761, a winter storm power interruption case where the plaintiffs alleged negligent failure to maintain the power system, the appellate court affirmed the trial court determination that the proposed class did not meet the predominance requirement. Although an ice storm ultimately caused power outages affecting all plaintiffs, it was not clear that the damages of the entire putative class were caused by the defendants’ alleged negligence. LaFleur, 737 So.2d at 765.
In Royal Street Grocery, Inc. v. Entergy New Orleans, Inc., 1999-3089 (La.App. 4 Cir. 1/10/01), 778 So.2d 679, writ denied, 789 So.2d 594 (La. 4/12/01), the appellate court affirmed the trial court’s denial of class certification where a fire in an underground electrical vault prompted the fire department to twice order that the utility de-energize an entire grid. Business and individual electrical customers sued, and the court found a lack of predominance of common liability | ^issues. Various parties had different causes of action and even different standing issues, and the individualized claims could warrant different defenses. Royal Street Grocery, 778 So.2d at 685.
Similarly, in Entergy Gulf States, Inc. v. Butler, 25 S.W.3d 359 (Tex. App. 2000), the Texas appellate court reversed a class cer *244 tification granted to electrical utility customers who claimed damages from power outages triggered by an ice storm. Again the plaintiffs based their claim on the alleged failure .to properly maintain the system to prepare for storms, and again the court found that common issues did not predominate. Butler, 26 S.W.3d at 362-63.
The plaintiffs rely on Cleco Corp. v. Johnson, 2001-0175 (La. 9/18/01), 796 So.2d 302, for the proposition that a nearly identical incident occurred in 1997 wherein Cleco actually settled with its customers, “and therefore had no problem acknowledging. that a power surge occurred and was the cause of the damage.” Johnson ,is distinguishable from the present case, as it did not involve class certification, but whether Cleco Corporation, the subrogee, had a cause of action against the tortfeasor, who had hit electrical equipment, causing a power surge,
The plaintiffs also rely on Doe v. Jo Ellen Smith Med. Found., 2012-0966 (La. App. 4 Cir. 4/24/13), 116 So.3d 655, 662, writ denied, 2013-1197 (La. 9/13/13), 120 So.3d 699, for the proposition that “the single most important issue to be determined is the duty of defendants.” Doe distinguished the facts of Price by stating:
On the issue of causation, the Court held that the plaintiffs needed to demonstrate through common evidence that chemicals- from the facility were found on the plaintiffs’ property. However, the Court concluded that because of the different types of damages (personal, property, and business) as well as the plaintiffs’ -varying habits, exposures, and lengths of exposure, the issue of causa-could not be resolved on a class wide basis.
Doe, 115 So.3d at 662 (internal citations omitted). For reasons that follow,,we find that the issue of causation in the present case is more similar to the facts of | ^Price, as there are different types - of damages and ’varying exposures involved in this matter,
We agree -with the trial court’s observations in referring to Royal Street Grocery, LaFleur, and Brown that “[t]he common issue in the holdings in these cases is that the class mechanism is not feasible because such -claims require individualized determinations not just on damages, but also with respect to the issues of fault and causation, and therefore the courts recognized that the factors of ‘commonality’ and/or ‘predominance’ were not met.”
The plaintiffs’ expert, James Orosz, P.E., who is an electrical engine'er, testified that the surge event that occurred on December 11, 2013, resulted from the higher-voltage line coming into contact with the lower-voltage line, 'and that this was the only surge event that occurred. He stated that there was only one surge event. He further testified that the restoration of power was completed in different stages, and he did not believe that the surge was during the restoration. Mr. Orosz noted that once the power to “this particular area” on Ochsner Boulevard was shut down to allow line crews to begin their work, the surge was actually over. When the switches were opened to allow the line crews to begin their work, the surge event had ended.
The testimony -of Mr. Orosz regarding how the surge occurred, the higher-voltage line coming into contact with the lower-voltage line, is consistent with the testimony of the defendants’ expert, Troy Little, P.E., a registered professional electrical engineer and certified fire cause and origin investigator. „ Mr. Little. testified that the higher-voltage line contacted the lower-voltage line, causing an abnormal electrical event, Mr. Morel also testified that the higher-voltage line fell on the lower-voltage line, causing the surge. The plaintiffs *245 argue that Mr. Little claimed at one point in his testimony that he was unsure if the high-voltage line fell on the lower-voltage line on the day of the accident. However, after reviewing 112the referred to testimony of Mr. Little, this court understands that he stated that he could not absolutely say that the higher-voltage line fell on the lower-voltage line and caused the surge, but that is likely what happened. He was simply explaining that there were no absolutes as to causation, not that he was unsure of whether the high-voltage line fell on the lower-voltage line.
Mr. Orosz also testified that every customer that was connected to the line with the surge did not have the same electrical circuits or same equipment, so they were not affected in the same manner. Some customers experienced no damage, and some customers experienced damage to some items, but not other items in the same residence. Mr. Orosz also stated that he would have expected all of the customers on the line to have experienced the surge, but that “[t]he damages would be contingent on other variables.”
Mr. Little also testified that based upon what he had seen, he did not believe there was any way to know "which customers were impacted with a voltage and at what level it may have' been. Mr. Little explained that numerous contingent variables would need to be considered to determine the effect, if any, that a surge would have had on a particular utility-service location or a piece of equipment within the location, including (1) the circuit and phase from which the location is served; (2) the distance between the location and the site of the vehicle accident; (3) the- voltage level at the location (a surge attenuates, or reduces, as it travels away from its source); (4) the quality and age of the grounding and wiring at the location; (5) the age, condition, and quality of the equipment; (6) any steps taken by customers to protect the property, such as using surge protectors; (7) actions by the customer that could have damaged the equipment, such as a malfunctioning or misused gem erator used during the outage; and (8) when the customer claims to have discovered the damage. Essentially,. Mr. Little testified that each piece ofjjequipment for each claim would need to be separately analyzed to determine if it was damaged and, if so, the cause of such damage.
Mr. Orosz further testified that to verify the accuracy of each claim, he would like “to get the piece of equipment and take it apart to see what—-what the damage is” to determine potential causes of the damage. Mr.-Orosz admitted that he did not inspect any- of the customer equipment in forming his opinions- in this matter. Plaintiffs have the burden of proving that all of the claimants share the- same single cause. See Price, 79 So.3d at 972 (finding plaintiffs failed to present sufficient evidence of a common thread of causation where plaintiffs’ expert did not actually perform an analysis of the attic dust of the properties tested to determine the source of contamination).
The trial court determined that both experts conceded that numerous factors and “variables” would need to be considered with respect to each claimant. Plaintiffs argue that Mr. Orosz testified that “everyone on the circuit would experience the surge.” However, Mr. Orosz did distinguish that the general group experienced the surge, but the surge may not have caused damage for all of the customers. Therefore, not every customer who experienced a surge would have sustained damage attributable to the surge. The plaintiffs’ expert testimony is at odds with any theory that a particular circuit or circuits can be used to create common issue to define the class. .
*246 Furthermore, this matter involves a multitude of different damages. Mark and Deborah Cortez filed suit against Cleco, alleging that during the repair of the Cleco equipment damaged in the vehicle accident, their home caught fire, causing personal injuries to Mr. Cortez. The suit claims damages for bodily injury, lost income, loss of earning capacity, mental anguish, loss of consortium, and property damage. Linda Bombardier also filed suit against Cleco, alleging that during the repair of the Cleco equipment damaged in the vehicle accident, both her home and | ^numerous contents of her home were damaged or destroyed. She sought damages for lost income, increased business expenses, mental anguish, property damage to her home, and loss of consortium. Cleco has provided a copy of numerous damage claims made by customers for various types of damaged equipment, including but not limited to damage to dishwashers, computers, ice makers, coffee pots, dryers, septic pumps, hot water heaters, a/c units, TVs, and ceiling fans.
Additionally, plaintiffs have named Pike as a defendant. It is undisputed that Pike was not an electrical provider, but only arrived at the scene after the vehicle accident and after the line had been de-energized. Pike’s only involvement was to replace two lightning arresters, and then Pike left the scene. Mr. Fontcuberta, the class representative, testified that he had no personal knowledge of any action taken by Pike that day. Mr. Orosz, the plaintiffs’ expert, testified that any surge would have occurred before Pike’s crew began its work.
There is no evidence in the record that the putative class members were customers of Pike, or how many, if any, putative class members were affected by the work performed by Pike. There is no evidence that the replacement of the lightning ar-resters adversely impacted any member of the putative class. Given the limited nature of the services performed by Pike, the replacement of two lightning arresters in a single subdivision, there are no common issues of law and fact relating to Pike’s involvement that would encompass the entire class. No person has been identified by the plaintiffs who may assert a claim against Pike for the work it performed.
We cannot say the trial court was manifestly erroneous in determining that the plaintiffs failed to carry them burden of demonstrating the requirement of commonality. The plaintiffs’ expert testified that he would have to take apart each piece of equipment damaged to determine the cause of the alleged failure and that there would be many variables. See Alexander v. Norfolk S. Corp., 2011-2793 (La. 3/9/12), 82 So.3d 1234, 1236 (per curiam) (trial court erred in certifying class because it “failed to take into account undisputed evidence in the record demonstrating that any determination of damages will be dependent upon proof of facts individual to each putative class member”): Brooks, 13 So.3d at 569 (trial court erred in certifying class because all experts testified that the predominate cause of flooding was dependent on an individual’s location). When each member of the proposed class will necessarily have to offer different facts to establish liability and damages, “the class [will] degenerate into a series of individual trials.” Alexander, 82 So.3d at 1236.
All of the criteria of Article 591(A) must be met for a class to be certified. Even though we have found that the commonality requirement is not met, precluding the certification of the proposed class, we will briefly address the other requirements.
Numerosity
In order to show numerosity, the plaintiffs must produce evidence that “the class is so numerous that joinder of *247 all parties is impracticable.” La. C.C.P. art. 591(A)(1). There is no set number above which a class is automatically considered so numerous as to make joinder impractical as a matter of law. Baker, 167 So.3d at 542. The mere “allegation of the existence of a large number of potential claimants does not satisfy the necessity to establish the element of numerosity.” Singleton v. Northfield Ins. Co., 2001-0447 (La.App. 1 Cir. 5/15/02), 826 So.2d 55, 63, writ denied, 2002-1660 (La. 9/30/02), 825 So.2d 1200; see Baker, 167 So.3d at 542. To meet the requirement, the plaintiff must show join-der is impractical, but, at the same time, there is a definable group of aggrieved persons. Baker, 167 So.2d at 542. The definable group of aggrieved persons must have plausible claims. Singleton, 826 So.2d at 63. At the class certification hearing, the plaintiffs bore the burden of proving that there were a Insufficient number of aggrieved parties, in fact, such that joinder was impracticable. See Doe v. Southern Gyms, LLC, 2012-1566 (La. 3/19/13), 112 So.3d 822, 835.
Plaintiffs alleged that “there are dozens[,] if not hundreds[,] of putative class members who were affected by the electrical surge.” In their motion to certify class, plaintiffs alleged that “well over a hundred [Cleco] customers suffered damages as a result of the incident.” The evidence presented at the certification hearing was that approximately 2,000 customers lost power. While the parties dispute exactly how many customers reported damage, the evidence supports' that just over 50 claims were made for damaged equipment. Mr. Orosz testified that over 200 customers were affected by the surge. He further stated that although he could say how many customers were affected by the common surge, he could not say how many suffered damage. He admitted to not examining any of the alleged damaged equipment.
The trial court based its finding that plaintiffs did not meet the numerosity requirement on the fact that although approximately 50 claims of damage were reported in this matter, only three Cleco customers filed suit arising out of the December 11, 2013 incident, and that no suits or claims were asserted against Pike.
We disagree with the trial court’s reasoning that the plaintiffs did not meet the numerosity requirement because only three lawsuits were filed against Cleco as this requirement is not dependent upon the number of lawsuits filed. However, “plaintiffs seeking certification [must] meet a threshold burden of ‘plausibility’ as a component element of a prima facie showing of numerosity.” Moreover, the “burden of plausibility requires some evidence of a causal link between the incident and the injuries or damages claimed by sufficiently numerous class members.” Boyd v. Allied Signal, Inc., 2003-1840 (La. App. 1 Cir. 12/30/04), 898 So.2d 450, 457, writ denied, 2005-0191 (La. 4/1/05), 897 So.2d 606. Therefore, 117due to the difficulties the plaintiffs in this case have in showing causation, as discussed above, we agree that the numerosity requirement has not been met.
Typicality and Representativeness
The typicality requirement of Article 591(A) requires that the claims of the class representatives are typical of the claims and defenses of the class. This requirement determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. Baker, 167 So.3d at 543. The representativeness requirement of Article 591(A) requires that the repre *248 sentatives will fairly and adequately protect the interest of the class.
Plaintiffs presented evidence that Mr. Fontcuberta was a residential customer of Cleco and had'an account for his own residence, as well as for. his daughter’s residence. Mr. Fontcuberta sought recovery for damage to the property of Map-Man, the business he runs out of his home, but MapMan was not a customer of Cleco on December 11, 2013. MapMan seeks recovery for damage to its property, even though it was never a customer of Cleco; Mr. Fontcuberta seeks recovery for damage to property belonging to his daughter, and not him. Ms. Westmoreland, who lives in the cottage. behind Mr. Fontcuberta’s house, reported that something may have been lying on the power line,, but Mr. Fontcuberta indicated that the line is underground. One of Mr. Fontcuberta’s televisions allegedly had to be replaced, whereas another television did not, and other’ appliances suffered no damage. One of Mr. Fontcuberta’s appliances connected to a surge protector was reported to be damaged, while others appliances connected to the same surge protector were not damaged. Mr. Fontcuberta claims, that MapMan lost business as a result of the loss of data on two hard drives, but he did not attempt to retrieve the data. Furthermore, the amount of the “business loss” was unknown to him, •
| isThe claims of Mr. Fontcuberta are not identical in nature to the claims of the members of the putative class. Mr. Fontcu-berta seeks damages for numerous electronics in his home, computer equipment of MapMan, and an electronic belonging to his daughter. Mr. and Mrs. Cortez seek damages for bodily injury, lost income, loss of earning capacity, mental anguish, loss of consortium, and property damage, as well as damages for their company, Speer, LTD. Ms. Bombardier seeks damages for lost income, increased business expenses, mental anguish, property damage to her home, and loss of consortium. As noted by the trial court, “these claimants are seeking damages associated with lost income, increased business expenses, inconvenience, loss of earning capacity, loss of consortium, loss of enjoyment of life, personal injury, medical expenses, and pain and suffering.” This case, does not present the situation where the only issue that varies is the extent of damage for each individual member of the class. See Brown, 506 So.2d at 623.
Furthermore, plaintiffs have offered no evidence that the claims of the proposed class representatives, Mr. Font-cuberta and MapMan, would be typical of the claims of the putative class against Pike. When Pike arrived at the scene of the- vehicle accident, the line had already been de-energized. Pike changed two lightning arresters. Pike left the scene after changing those arresters. Therefore, the trial court did not commit manifest error in determining that the plaintiffs failed to satisfy the typicality and representativeness requirements of Article 591(A).
Predominance and Superiority
Additionally, plaintiffs were required to demonstrate that, pursuant to Article 591(B)(3), common questions of law or fact predominate over any individual issues and, that the class action procedure is superior to any other. Price, 79 So.3d at 975. The Louisiana Supreme Court explained:
liiiThe inquiry into predominance tests “whether the proposed classes are sufficiently cohesive to warrant adjudication .by representation.” ... [T]he predominance requirement is more demanding than the commonality requirement, because it “entails identifying the substantive issues that will control the outcome, *249 assessing which issues will predominate, and then determining whether the issues are common to the class,” a process that ultimately “prevents the class from degenerating into a series of individual trials.” [Citations omitted.]
Price, 79 So.3d at 975 (quoting Dupree v. Lafayette Ins. Co., 2009-2602 (La. 11/30/10), 51 So.3d 673, 683).
As the commonality requirement has not been met in this matter, the logical corollary is that substantive questions of law and fact common to the class will not predominate over questions affecting only individual members. Where “each member of the proposed class will necessarily have to offer different facts to establish liability and damages,” and “any determination of damages will be dependent upon proof of facts individual to each putative class member,” it is reversible error to certify a class. Alexander, 82 So.3d at 1236. We agree with the trial court that “there are substantial individualized differences as to each element of potential claims, including the critical inquiry into causation.” Therefore, the predominance requirement has not been satisfied.
Furthermore, the present case presents issues as to individualized defenses, and issues as to the type of damages allegedly sustained by individual class members that make the class action procedure inferior, rather than superior, to other forms of adjudication in this case. Royal Street Grocery, 778 So.2d at 685-86. The claims of the non-customers of Cleco, Map-Man, Mr. and Mrs. Cortez, and Speer, LTD, would require separate adjudication, and thereby undermine judicial efficiency. See Price, 79 So.3d at 977; Dupree, 51 So.3d at 701. Therefore, the class action is not superior to other available methods for the fair and efficient adjudication of this matter.
I ^CONCLUSION
For the above and foregoing reasons, the trial court’s July 21, 2016 judgment denying plaintiffs’ motion to certify class is hereby affirmed. Costs of this appeal are assessed against plaintiffs, Robert “Bert” L, Fontcuberta and MapMan, LLC, individually, and on behalf of all others similarly situated.
AFFIRMED.

. Throughout the record and the briefs, the parties at various times refer to “MapMan” as "MapMan.” Since the petition was filed in the name of "MapMan,” we will refer to this party as such.

. Cleco Corporation asserts that it is not the proper party in this litigation, as it is a holding company that has no customers and no potential liability. Plaintiffs filed a supplemental and amending petition adding Cleco Power, LLC, the public utility in St. Tammany Parish, as a defendant, but did not amend their class certification. Although this court refers to “Cleco” in this opinion, we are cognizant that Cleco Corporation has not waived its defense that it is a proper party to this action.

. In their brief, plaintiffs incorrectly refer to Mr. Morel as a Cleco employee. The record supports that Mr. Morel was an empldyee of Pike at the time of the incident, and an employee of Chain Electric at the time his deposition taken on January 19, 2016. There is no evidence in the record that Mr. Morel was ever employed by Cleco.

. There does not appear to be a transcript from this hearing in the record. The court minutes indicate that a hearing took place and the trial court signed a judgment on August 30, 2016, referencing the hearing date.

. The Amended Order for Devolutive Appeal is dated December 7, 2016.